James E. BROWN, Appellant,

v.

**1401 NEW YORK AVENUE, INC., et al., Appellees.**

No. 10–CV–769.

District of Columbia Court of Appeals.

Submitted April 20, 2011.

Decided Aug. 4, 2011.

Tilman L. Gerald for appellant.

Edward Scheideman and Michelle L. Schaefer, Washington, DC, for appellees.

Before THOMPSON and OBERLY, Associate Judges, and NEBEKER, Senior Judge.

THOMPSON, Associate Judge:

After a bench trial, the Superior Court found that Travis Murrell and appellant James E. Brown were business partners, and it entered a judgment holding Murrell and Brown jointly and severally liable for amounts owed to appellee 1401 New York Avenue, Inc. ("1401") under an office lease agreement ("the Lease Agreement") signed by Murrell.[1] Brown now challenges the judgment on several grounds, arguing primarily that there was not a preponderance of the evidence to support the court's determination that he and Murrell were partners (in the law firm of Murrell & Brown) at the time the Lease Agreement was signed. We affirm.

## I.

In general, a partnership is formed "when two or more competent persons [contract] to place their money, effects, labor, and skill or some or all of them, in lawful commerce or business, and to divide profit and bear the loss in certain proportions." *Beckman v. Farmer,* 579 A.2d 618, 627 (D.C.1990) (alteration in original; quotation marks omitted); *see also* D.C.Code § 33–102.02 (2001) (setting

---

1. The judgment was based on rent payments owed for the period from January through August 2004.

out the District of Columbia Uniform Partnership Act definition of partnership as "the association of 2 or more persons to carry on as co-owners of a business for profit ... whether or not the persons intend to form a partnership").[2] While the "manner in which the parties themselves characterize the relationship is probative" of whether their relationship is a partnership, "the question ultimately is [an] objective" one: whether the parties intended to do the acts that in law constitute partnership. *Beckman*, 579 A.2d at 627. The traditional "attributes of partnership such as profit and loss sharing and joint control of decisionmaking are necessary guideposts of inquiry, but none is conclusive." *Id.* "[W]hether a partnership exists is an issue of fact, turning less on the presence or absence of legal essentials than on the intent of the parties," as gathered from "their conduct and dealings with each other." *Id.* at 628, 630 (internal citation omitted). "[P]artners are jointly and severally liable for partnership debts and obligations." *Id.* at 640 n. 28.

In this case, the trial court found that Murrell's and Brown's "actions while operating as Murrell & Brown overwhelmingly support the conclusion that they operated as a general partnership" and that Murrell and Brown "intended that the Lease Agreement be a contract between [1401] and the business Murrell & Brown."

## II.

■ In determining that Brown and Murrell were partners, the trial court relied in part on evidence that tax returns designated as partnership returns were filed under the name Murell & Brown.

Brown argues that the court erred in admitting, over his objection, Murrell's individual tax returns and the tax returns of Murrell & Brown. Specifically, Brown complains that the court admitted the returns as business records even though 1401 "failed to lay a proper foundation for the admission of those records under the hearsay exception of records kept in the ordinary course of business." Even if we assume *arguendo* that the tax returns were erroneously admitted, this claim does not entitle Brown to relief. We have long recognized that "[p]rejudice arising from the improper receipt of evidence may be mitigated when the same information, or very nearly the same information, has been properly placed before the [fact-finder] through another witness or in a different form." *Rotan v. Egan*, 537 A.2d 563, 567 (D.C.1988). Here, accountant Henry Meadows testified that, in 2002, he prepared for Murrell & Brown a "1065" tax form entitled "U.S. Return of Partnership Income." He also testified that partnership returns were filed on behalf of Murrell & Brown prior to his engagement, information that influenced his decision to "prepare[ ] the partnership form." The court heard Meadows's acknowledgment during cross-examination that "a partnership may be used to show the allocation of expenses among individuals who are not necessarily partners," his assertion that he never knew Murrell and Brown to "share income," and his statement that, by filing the "partnership" tax forms that he prepared, he was not "representing that [Brown] was a partner, necessarily." In addition, the court specifically took note that the returns entered into evidence were signed only by the tax preparer and

2. This section of the D.C.Code is based on § 202 of the Uniform Partnership Act (1997) ("UPA"). Comments to that section of the UPA recognize that persons "may inadvertently create a partnership despite their expressed subjective intention not to do so." *Cf. Beckman*, 579 A.2d at 627 ("[T]he rights and duties of partnership in respect to third parties can arise by law even though the parties do not intend to become partners.").

"not Defendant Murrell or, in the case of the Murrell & Brown returns, [not by] either Defendant Murrell or Defendant Brown." On this record, we are satisfied (1) that the tax forms admitted into evidence were merely cumulative evidence that partnership tax forms were created by Meadows for a business entity named "Murrell & Brown," and (2) that the court had the information it needed to accord to that evidence the appropriate weight. If admitting the tax forms was error, it was harmless error.[3]

## III.

■ The remainder of Brown's arguments on appeal go to the weight and sufficiency of the evidence to establish that Brown and Murrell were partners at the time the Lease Agreement was signed. Brown asserts that the trial court "did not and cannot point to a single instance where [he] held himself out to be a partner with Murrell in Murrell & Brown immediately preceding December 11, 2000 [the date when the Lease Agreement was signed] or thereafter," and that nothing in the record "adumbrate[s] that Mr. Murrell either intended or considered himself to be a partner of Mr. Brown and vice versa." We cannot agree. Although 1401 did not present proof of a partnership agreement between Murrell and Brown, as the trial court stated, it presented evidence that both Murrell and Brown "held themselves out to the world as partners." The court cited several items of evidence, including exhibits showing that Murrell & Brown had firm letterhead; that "Murrell & Brown" had a checking account "from which both [Murrell and Brown] had the authority to issue checks";[4] and that a sign behind the receptionist's desk at the leased premises read "MURRELL & BROWN." The court found particularly persuasive that "[d]ating back to at least 1998, Defendants Murrell and Brown practiced before the United States District Court for the District of Columbia under the name 'Murrell & Brown,' " and that, in one filing with the District Court in June 1999, "Defendant Brown attached his *curriculum vitae*, in which he identified himself as a 'Partner' in Murrell & Brown beginning in 1997." The court relied on authority that a firm's holding itself out to taxing authorities, lessors, creditors, banks, clients, and its accountant as a partnership is "powerful evidence of a partnership," *Landise v. Mauro*, 725 A.2d 445, 452 (D.C.1998),[5] and reasoned that "the use of the firm name Murrell & Brown in documents filed with the [District Court] is similar to making such representations to an insurer, bank or taxing authority ...

3. The trial judge indicated that she was applying a negative inference because of Murrell's failure to respond to discovery requests for his financial information, including his tax returns. Brown argues that he was prejudiced because the court erroneously applied that negative inference not only against Murrell but also against Brown. We are unpersuaded by this contention, because the court's Findings of Fact and Conclusions of Law refer specifically to the "negative inference against Defendant Murrell," and, during trial, the court explicitly stated that the inference "doesn't apply to Mr. Brown." And, in any event, the court found that "[e]ven without application of the negative inference ... there

is overwhelming evidence in the record that Murrell & Brown was a general partnership."

4. *Cf. Ga. Cas. Co. v. Hoage*, 59 F.2d 870, 873 (D.C.Cir.1932) (finding that "[p]lacing the money of the business in bank to the joint account ... would, without anything more, indicate joint ownership" for purposes of determining existence of partnership).

5. *See also Beckman*, 579 A.2d at 628 (same); *In re Karr*, 722 A.2d 16, 25 n. 18 (D.C.1998) ("We are aware, of course, that vis-à-vis third parties, a lawyer whose name appears in a law firm name may be liable as partner by estoppel.").

and in many ways carries greater repercussions if the representation is false or misleading." The court also cited D.C. Rule of Professional Conduct 7.5, which "prohibits lawyers from stating or otherwise implying that they are partners when that is not the case."[6] In addition, in reaching its conclusion that Murrell & Brown was a general partnership, the court relied on an (unverified) Answer that Murrell made in August 2005 to the complaint in a lawsuit that Brown brought against him. In that Answer, Murrell's lawyers asserted on his behalf that, on or about May 1997, Murrell and Brown "formed a partnership known as Murrell & Brown through which they operated a law practice," and that "Murrell and Brown shared profits and losses and, for over five years, worked together in the practice of law developing a prestigious practice well known in the area of special education law." The court reasonably found that Brown's *curriculum vitae* "corroborate[d] [the] information filed" in Murrell's 2005 Answer.

Brown contends that the evidence on which the court relied was "too remote in time to support a notion that a partnership existed in December of 2000," the date of the Lease Agreement. We are unpersuaded by this argument. The evidence that Murrell and Brown entered into and continued in a partnership in years immediately prior to the date of the Lease Agreement was not direct evidence of the existence of a partnership as of that date, but it was part of a body of strong circumstantial evidence that Murrell and Brown remained in such a relationship when Murrell signed the Lease. In addition to the tax filing and other evidence that the court cited, Murrell testified in his deposition that it was Brown who negotiated the Lease.[7] Murrell also testified in the deposition that Brown handed him the Lease (the cover sheet of which states that it is between 1401 and "Tenant Murrell & Brown") to sign, and that he signed the Lease—as "Travis A. Murrell, Partner"—in Brown's presence, while Brown waited. In addition, a witness for 1401 testified that Brown signed a Murrell & Brown check dated February 7, 2003, in payment of the rent owed under the Lease for that month.[8]

**6.** The court observed that the "[c]omment to paragraph (d) of Rule 7.5 specifically references lawyers who share office space but do not practice as partners." As the court noted, the comment states that "lawyers sharing office facilities, but who are not in fact partners, may not denominate themselves as, for example, Smith and Jones, for that title suggests partnership in the practice of Law."

**7.** Brown argues that the court made selective use of "contradictory statements in Mr. Murrell's October 2004 deposition and August 2005 answer," crediting statements that weighed in favor of a conclusion that Murrell and Brown were partners and ignoring or discrediting statements that weighed against that conclusion. It is clear, however, that a finder of fact may "credit some, but not all, of the testimony of a witness." *Wilson v. United States*, 673 A.2d 670, 673 (D.C.1996).

**8.** Brown did not present any testimony at trial, but argued that he and Murrell merely shared office space and expenses during the relevant time. As we have discussed, the evidence permitted the court to infer otherwise—i.e., "that the parties associated together with the intent to carry on the business as co-owners for profit." *Beckman*, 579 A.2d at 629. We also note that courts have recognized that individuals who share business expenses may indirectly accomplish profit-sharing and thereby function as a partnership. *See, e.g., Stuart v. Overland Med. Ctr.*, 510 S.W.2d 494, 497–98 (Mo.Ct.App.1974) (rejecting contention that plaintiff doctor was not in a profit-sharing arrangement but only in an expense-sharing arrangement with other doctors who were co-occupants in a medical center; concluding that there was *prima facie* evidence of a partnership between the doctors, because the formula for allocation of expenses did not necessarily reflect each doc-

We are satisfied that the court's factual findings were not clearly erroneous and that the court ruled upon sufficient evidence and did not commit legal error in concluding that Murrell and Brown were partners at the relevant time and that Brown was a real party in interest who was bound by the Lease Agreement. Wherefore, the judgment of the trial court is

*Affirmed.*

---

tor's actual expenses, and therefore one doctor could realize profits that otherwise might have been realized by other doctors whose actual expenses were slight when compared to the actual expenses of the first doctor; and observing that "[i]t was in this manner that the doctors in the Center actually shared profits").