**FATHI YUSUF and UNITED CORPORATION, Appellants/Defendants**

**v.**

**MOHAMMAD HAMED, by his authorized agent, WALEED HAMED, Appellee/Plaintiff**

S. Ct. Civil No. 2013-0040:

Supreme Court of the Virgin Islands

September 30, 2013

JOSEPH DIRUZZO III, ESQ., Fuerst, Ittleman, David & Joseph, PL, Miami, FL, *Attorney for Appellants*.

JOEL H. HOLT, ESQ., CARL J. HARTMANN III, ESQ., St. Croix, USVI, *Attorneys for Appellee*.

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice*.

## OPINION OF THE COURT

(September 30, 2013)

CABRET, *Associate Justice*. Fathi Yusuf and United Corporation appeal the Superior Court's preliminary injunction requiring them to maintain joint management of the three Plaza Extra stores with Mohammad Hamed pending trial on his claim of a partnership interest in the stores. Yusuf and United argue that the injunction must be vacated because Hamed has failed to meet his burden of establishing the need for an injunction and the amount of injunction bond was legally insufficient. For the following reasons, we affirm the Superior Court's April 25, 2013 Order granting Hamed's preliminary injunction motion, but remand for the Superior Court to reconsider the sufficiency of the bond.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Yusuf and Hamed grew up as neighbors in a village in the West Bank. In 1973, Hamed immigrated to the United States, settling on St. Croix, where Yusuf lived with his wife. Several years later, in 1979, Yusuf incorporated United Corporation as a Virgin Islands corporation — which continues to be owned and operated by Yusuf and members of his immediate family — and began constructing the Plaza Extra supermarket in a shopping center owned by United in Estate Sion Farm on St. Croix. After Yusuf was unable to secure funding to complete the store, Hamed sold his two grocery stores and invested a total of $400,000 into the Sion Farm store. According to Hamed, this investment resulted in an equal partnership between Yusuf and Hamed after other investors abandoned the project.

843

The Sion Farm store opened in 1986, with Yusuf handling the financial aspects of the business, and Hamed managing the store's inventory and warehouse. The Sion Farm store (colloquially known as "Plaza East") proved successful, leading to the construction of two more stores, one in Tutu Park Mall on St. Thomas in 1993 and another in Grove Place on the west end of St. Croix (referred to colloquially as "Plaza West") in 2002. In 1996, Hamed retired from his role in the operations of the business due to illness, giving a power of attorney and delegating his management responsibilities to one of his sons, Waleed Hamed. After Mohammad Hamed's retirement, the Yusuf and Hamed families continued joint management of the stores, with members of both families co-managing each store. At the time the Superior Court issued the preliminary injunction, Mufeed Hamed, Waleed Hamed, and Yusuf Yusuf managed Plaza East; Waheed Hamed, Fathi Yusuf, and Nejah Yusuf managed the St. Thomas store; and Hisham Hamed and Mahar Yusuf managed Plaza West. These three stores currently employ approximately 600 persons in the Territory.

In 2003, United and members of the Yusuf and Hamed families were indicted in the United States District Court of the Virgin Islands for tax evasion, resulting in a plea agreement entered in 2011. Pursuant to the agreement, United agreed to plead guilty to tax evasion and the charges against the individual members of both families were dismissed. As a result of the criminal proceeding, a federal receiver was appointed to oversee the profits from the Plaza Extra stores in 2003, holding these funds — currently amounting to approximately $43 million — in escrow outside of the parties' control.

Around the time of the plea agreement in 2011, management cooperation between the two families began to break down. The store managers started requiring that a member of both the Yusuf and Hamed families sign off on any distribution of funds from Plaza Extra accounts, and Fathi Yusuf alleged that a review of financial records required by the plea agreement revealed that members of the Hamed family had been stealing money from the stores. Yusuf then attempted to evict Plaza East from United's shopping center by increasing the store's rent, indicating in a letter that "United Corporation would like its location back," and that "as of January 1, 2012 the rent will be $200,000.00 per month, only for the coming three months. If you do not give up the keys before three months, it will be $250,000.00 per month until further notice." (J.A. 67.)

This went unpaid, and a later rent statement demanded payment of $2,168,609.80 for the months of January to September 2012. A few months later, Yusuf informed Mohammad Hamed of his intention to end their business relationship, sending a proposed "Dissolution of Partnership" agreement to Hamed on March 12, 2012, and initiating unsuccessful settlement negotiations. Later, on August 15, 2012, Yusuf wrote a check for $2,784,706.25 to himself and his son Mahar Yusuf from one of Plaza Extra's operating accounts over the written objections of Waleed Hamed. Mahar Yusuf, who is also the president of United Corporation, later provided conflicting testimony as to what United did with these funds.

Using his power of attorney for Mohammad Hamed, Waleed Hamed initiated this action on September 17, 2012, filing a complaint against Fathi Yusuf and United Corporation in the Superior Court. The complaint alleged that Fathi Yusuf and Mohammad Hamed had formed a partnership in 1984, through which they agreed to jointly manage the stores and equally share the profits and losses. Hamed alleged that Yusuf acted in a manner "designed to undermine the partnership's operations and success," citing Yusuf's eviction attempts and his removal of $2.7 million from Plaza Extra's operating accounts, which Hamed alleged violates the partnership agreement and "threatens the financial viability" of the stores. (J.A. 44-48.) Hamed also alleged that Yusuf had threatened to close the Plaza Extra stores and terminate the employment of Hamed family members, "discredit[ed] the operations of these three stores by making defamatory statements about [Mohammad] Hamed," changed the management structure to undermine Hamed's partnership interest, "jeopardiz[ed] the good will" of the three stores, unilaterally canceled inventory orders, and used Plaza Extra funds in unrelated business deals. (J.A. 46-48.) Based on these allegations, Hamed sought legal and equitable relief, including declaratory and injunctive relief, and compensatory damages for Hamed's financial losses.

The next day, Hamed moved for a preliminary injunction against Yusuf and United to prevent them from "interfering with Hamed's partnership rights . . . in operating . . . the three Plaza Extra supermarkets," and from "withdrawing any funds from any partnership bank accounts or brokerage accounts without the consent of Hamed." (J.A. 82-87.) Following Yusuf and United's unsuccessful attempt to remove the case to District Court, Hamed renewed his motion for a preliminary injunction "on an

emergency basis" on January 9, 2013, alleging that "supermarket operations may be so compromised that they will no longer be viable if the [c]ourt does not intervene." (J.A. 301 (emphasis omitted).) The Superior Court held hearings on January 25 and 31, 2013, taking judicial notice of deposition testimony given by Fathi Yusuf on February 2, 2000, in an unrelated civil action in Territorial Court,[1] and admitting the "Dissolution of Partnership" agreement over Yusuf and United's objection. The court also heard testimony from several members of both the Yusuf and Hamed families, as well as other Plaza Extra employees.

The Superior Court issued a preliminary injunction on April 25, 2013, requiring the Yusuf and Hamed families to maintain joint management of the stores and requiring that any distribution of funds from Plaza Extra accounts be approved by a representative for both Yusuf and Hamed. The court ordered that Hamed post a $25,000 bond with the court, and that his interest in the $43 million of profits held in escrow by the District Court "serve as additional security." (J.A. 4, 27.) Hamed posted the $25,000 bond with the court on May 1, 2013. Yusuf and United then moved for reconsideration of the injunction and the bond, which the Superior Court denied on May 31, 2013.

## II. JURISDICTION

This Court has jurisdiction over "[i]nterlocutory orders of the Superior Court of the Virgin Islands . . . granting, continuing, modifying, refusing or dissolving injunctions." V.I. CODE ANN. tit. 4, § 33(b)(1). Additionally, Yusuf and United filed a timely notice of appeal on May 13, 2013. *See* 4 V.I.C. § 33(d)(5); *First Am. Dev. Group/Carib, LLC v. WestLB AG*, 55 V.I. 594, 600-01 (V.I. 2011) (holding that the jurisdictional thirty-day filing deadline in section 33(d)(5) applies to appeals under section 33(b)). Therefore, we have jurisdiction to review the Superior Court's April 25, 2013 Order granting Hamed's motion for preliminary injunction, while the underlying claims in Hamed's action remain pending before the Superior Court. *Petrus v. Queen Charlotte Hotel Corp.*, 56 V.I. 548, 554 (V.I. 2012) (citing *In re Najawicz*, 52 V.I. 311, 324-25 (V.I. 2009)).

---

[1] Before October 29, 2004, the Superior Court of the Virgin Islands was known as the Territorial Court of the Virgin Islands. *See* 2004 V.I. SESS. LAWS 179; *see also Mendez v. Gov't of the V.I.*, 56 V.I. 194, 201 n.3 (V.I. 2012).

## III. DISCUSSION

Yusuf and United argue that the Superior Court erred in granting the preliminary injunction because Hamed failed to meet his burden of demonstrating that an injunction is necessary. They also argue that the court erred in failing to conduct a separate bond hearing and that the injunction bond is legally insufficient and illusory. We address each argument in turn.

### A. Preliminary Injunction

In deciding whether to grant a preliminary injunction, the Superior Court must consider four factors:

> (1) whether the movant has shown a reasonable probability of success on the merits; (2) whether the movant will be irreparably injured by denial of the relief; (3) whether granting preliminary relief will result in even greater harm to the nonmoving party; and (4) whether granting the preliminary relief will be in the public interest.

*Petrus*, 56 V.I. at 554 (quoting *Iles v. de Jongh*, 638 F.3d 169, 172, 55 V.I. 1251 (3d Cir. 2011)).[2] "A preliminary injunction is an 'extraordinary and drastic remedy' . . . never awarded as of right," *Munaf v. Geren*, 553 U.S. 674, 689-90, 128 S. Ct. 2207, 171 L. Ed. 2d 1 (2008) (citation omitted), and "may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22, 129 S. Ct. 365, 172 L. Ed. 2d 249 (2008);[3] *see also Direx Israel, Ltd. v. Break-*

---

[2] Because Federal Rule of Civil Procedure 65, governing preliminary injunctions and temporary restraining orders, applies in Superior Court pursuant to Rule 7, we rely on federal case law in reviewing the Superior Court's order. *See* SUPER. CT. R. 7 ("The practice and procedure in the Superior Court shall be governed by the Rules of the Superior Court and, to the extent not inconsistent therewith, by . . . the Federal Rules of Civil Procedure . . . .").

[3] In *Petrus*, we adopted the injunction standard used by the United States Court of Appeals for the Third Circuit. The Third Circuit recently indicated that it applies a sequential injunction test, requiring the moving party to fully satisfy each of the four injunction factors. *Conestoga Wood Specialities Corp. v. Sec'y of U.S. Dep't of Health & Human Servs.*, 2013 U.S. App. LEXIS 2706, 2013 WL 1277419, at *1-2 (3d Cir. Feb. 8, 2013). This sequential test is at odds with the holdings of other circuit courts, which apply different variations of a "sliding-scale test," allowing the moving party to obtain an injunction even where the probability of success on the merits is low if the court determines that the moving party's likelihood of irreparable harm is great and the nonmoving party's likelihood of irreparable harm is very low. *See, e.g., Hoosier Energy Rural Elec. Co-op., Inc. v. John Hancock Life Ins.*

*through Med. Corp.*, 952 F.2d 802, 811 (4th Cir. 1991) (a preliminary injunction "involv[es] the exercise of a very far-reaching power, which is to be applied only in the limited circumstances which clearly demand it" (internal quotation marks omitted)). Yusuf and United argue that Hamed did not meet his burden on any of the preliminary injunction factors, and therefore the injunction must be vacated. While this Court reviews the Superior Court's overall decision to grant or deny an injunction for abuse of discretion, *Petrus*, 56 V.I. at 554 (citing *In re Najawicz*, 52 V.I. at 328), we review the Superior Court's factual findings regarding likelihood of irreparable harm, harm to the nonmoving party, and whether the injunction is in the public interest only for clear error. *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.*, 290 F.3d 578, 595 (3d Cir. 2002).

## 1. *Reasonable probability of success on the merits*

In addressing the first factor, the Superior Court held that there was a reasonable probability that Hamed would succeed on the merits of his partnership claim. The court found that there was evidence showing the formation of an at-will partnership, including equal sharing of profits and losses, joint management, and joint contributions to operating expenses.

---

*Co.*, 582 F.3d 721, 725 (7th Cir. 2009) ("[h]ow strong a claim on the merits is enough depends on the balance of harms: the more net harm an injunction can prevent, the weaker the plaintiff's claim on the merits can be"). We have applied such a test in previous cases, indicating that a party may obtain a stay pending appeal (which applies the same test as a preliminary injunction) even where the party makes a weak showing on the likelihood of success if the "balance of the equities" favors a stay. *Rojas v. Two/Morrow Ideas Enters.*, S. Ct. Civ. No. 2008-0071, 2009 V.I. Supreme LEXIS 6, *6, 2009 WL 321347, at *2 (V.I. Jan. 22, 2009) (unpublished). There is significant disagreement regarding whether the United States Supreme Court mandated a sequential test in *Winter*, with some courts holding that it did, and others holding that variations of the sliding-scale test survive. *Compare Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 346-47 (4th Cir. 2009) (holding that *Winter* requires a sequential test), *vacated on other grounds by* 559 U.S. 1089, 130 S. Ct. 2371, 176 L. Ed. 2d 764 (2010), *with Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134 (9th Cir. 2011) ("[W]e join the Seventh and the Second Circuits in concluding that the 'serious questions' version of the sliding scale test for preliminary injunctions remains viable after the Supreme Court's decision in *Winter*."); *see also* Rachel A. Weisshaar, *Hazy Shades of Winter: Resolving the Circuit Split over Preliminary Injunctions*, 65 VAND. L. REV. 1011, 1032-47 (2012) (detailing pre- and post-*Winter* tests). We decline to address here whether a sequential test, a sliding-scale test, or another formulation is more appropriate, as Hamed satisfied the more stringent sequential test by establishing all four preliminary injunction factors.

Yusuf and United argue that there was no admissible evidence of profit sharing, and that the statute of frauds requires an indefinite, at-will partnership to be in writing.[4]

■ In order to show a reasonable probability of success on the merits, Hamed did not need to show that he will actually prevail on the merits at trial, or that his success is "more likely than not," only that he has "a reasonable chance, or probability, of winning." *Singer Mgmt. Consultants, Inc. v. Milgram*, 650 F.3d 223, 229 (3d Cir. 2011); *see also Northeast Ohio Coalition for Homeless v. Husted*, 696 F.3d 580, 591 (6th Cir. 2012) ("At the preliminary injunction stage, a plaintiff must show more than a mere possibility of success, but need not prove his case in full." (internal quotation marks and citation omitted)). In order to do this, Hamed must introduce evidence supporting each element of his cause of action. *Punnett v. Carter*, 621 F.2d 578, 583 (3d Cir. 1980) ("the burden is on the party seeking relief to make a prima facie case showing a reasonable probability that it will prevail on the merits").

■ Although this Court has yet to speak to the elements that a party must prove in order to establish the existence of a partnership, the Virgin Islands Code incorporates the Uniform Partnership Act of 1997 ("UPA"). *See* 26 V.I.C. §§ 1-274. The UPA provides that "the association of two or more persons to carry on as co-owners a business for profit forms a partnership, whether or not the persons intend to form a partnership," 26 V.I.C. § 22(a). "In determining whether a partnership is formed,"

---

[4] Yusuf and United also argue that any partnership agreement is unenforceable under the statute of limitations. However, Yusuf and United made a single passing reference to the statute of limitations before the Superior Court during the January 25, 2013 hearing, and did not make any substantive arguments regarding this issue until their motion to stay the injunction pending appeal. A party asserting the statute of limitations must do so in a timely fashion, usually in their first response to the complaint. *See* FED. R. CIV. P. 8(c)(1) (requiring a party to "affirmatively state" the statute of limitations in responding to a pleading). Because Yusuf and United failed to do this, this argument is waived. *Brady v. Cintron*, 55 V.I. 802, 817 n.15 (V.I. 2012) ("It is well-established . . . that Virgin Islands statutes of limitation . . . may be waived if not timely asserted by a defendant or equitably modified by a court." (citing *Jensen v. V.I. Water & Power Auth.*, 52 V.I. 435, 442 (V.I. 2009) and FED. R. CIV. P. 8(c))). Yusuf and United also argue that Hamed's retirement ended the partnership, and that because "the [injunction] at issue interferes with employer-employee relations, it is void *ab initio* as a matter of law" under 24 V.I.C. § 341. (Appellants' Br. 35.). But they did not raise these arguments with the Superior Court either, and so they are also waived. V.I.S.CT.R. 4(h) ("Only issues and arguments fairly presented to the Superior Court may be presented for review on appeal. . . .").

849

section 22(c) prescribes that neither joint property ownership nor "[t]he sharing of gross returns" standing alone will establish a partnership. 26 V.I.C. § 22(c)(1)-(2). But "[a] person who receives a share of the profits of a business is presumed to be a partner in the business" unless those profits were received as payment of a debt, for services of an independent contractor, employee compensation, rent, "an annuity or other retirement or health benefit," loan interest, or "for the sale of the goodwill of a business." 26 V.I.C. § 22(c)(3)(i)-(vi); UNIF. PARTNERSHIP ACT 1997 § 202(c)(3)(i)-(vi). Other jurisdictions interpreting these UPA provisions have held that in the absence of a written partnership agreement, a court should consider "the [express or implied] intent of [the parties], whether there was joint control and management of the business, whether there was a sharing of the profits as well as a sharing of the losses[ ] and whether there was a combination of property, skill or knowledge." *Griffith Energy, Inc. v. Evans*, 85 A.D.3d 1564, 925 N.Y.S.2d 282, 283 (App. Div. 2011); *see also Redland v. Redland*, 2012 WY 148, 288 P.3d 1173, 1213 (Wyo. 2012) ("The basic elements of a partnership . . . are that the parties agree to share in some way the profits and losses of the business venture."). While a subjective intent to form a partnership is not required under the UPA, the parties must "inten[d] to do things that constitute a partnership." *Redland*, 288 P.2d at 1213; *see also Brown v. 1401 New York Ave., Inc.*, 25 A.3d 912, 913-14 (D.C. 2011) ("While the manner in which the parties themselves characterize the relationship is probative of whether their relationship is a partnership, the question ultimately is an objective one: whether the parties intended to do the acts that in law constitute partnership." (internal quotation marks and alterations omitted)). But no single factor is determinative, and "it is necessary to examine the . . . relationship as a whole." *Griffith Energy*, 925 N.Y.S.2d at 283 (citation omitted); *see also Tedeton v. Tedeton*, 87 So. 3d 914, 924 (La. App. Ct. 2012) ("There are no hard and fast rules in making the determination of whether a partnership exists and each case must be considered on its own facts."); *Wood v. Phillips*, 823 So. 2d 648, 653 (Ala. 2001) ("There is no settled test for determining the existence of a partnership. That determination is made by reviewing all the attendant circumstances.").

Yusuf and United argue that the Superior Court erred in finding that Hamed had shown a reasonable probability of success on the merits because this finding was based on the proposed "Dissolution of

Partnership" agreement, which Yusuf and United argue should not have been admitted because it was a "privileged settlement communication."[5](Appellants' Br. 25-26.) Without this document, they argue "there was no evidentiary support for any partnership distributions to [Hamed]." (Appellants' Br. 25-26.) But regardless of whether the proposed dissolution agreement was erroneously admitted, it was undisputed at the injunction hearings that Yusuf and Hamed share the profits from the Plaza Extra stores. Hamed presented the testimony of Waleed Hamed and Mufeed Hamed, who both testified that Yusuf and Hamed share in the profits and losses from the stores, and Mohammed Hamed testified that he owns half of the business "in the winning or loss." (J.A. 532.) This evidence was further supported by the testimony of Mahar Yusuf, one of the managers of Plaza West and the president of United Corporation, who stated that Yusuf and Hamed have "a business agreement . . . [t]o operate the store," sharing the profits "50/50." (J.A. 546.) After this testimony, Yusuf and United called Yusuf Yusuf, Fathi Yusuf's son and one of the managers of Plaza East, who testified that Mohammed Hamed is his father's "partner" and that "there is an agreement . . . [a]ccording to profits." (J.A. 696.) While this uncontested evidence alone creates a presumption that Hamed is a partner in the

---

[5] In a related argument, Yusuf and United assert that the Superior Court erred by taking judicial notice of, and "rel[ying] almost exclusively on," Yusuf's February 2000 deposition testimony because "courts may not take judicial notice of either factual findings or the record of another case, including testimony, as substantive proof of the matters asserted." (Appellants' Br. 19.) But as Hamed notes, Yusuf and United have waived this argument, as they did not object to the admission of the deposition testimony on these grounds before the Superior Court. *See* V.I.S.CT.R. 22(m) (issues that were "not raised or objected to before the Superior Court" are waived); FED. R. EVID. 103(a)(1)(B) ("A party may claim error in a ruling . . . if the ruling admits evidence, a[nd the] party . . . timely objects or moves to strike; and . . . states the specific ground . . . ."). Although Yusuf and United did object when Hamed moved for the court to take judicial notice of the testimony, they objected only "under the rule of completeness," indicating that Hamed had introduced "cherry pick[ed]" portions of the testimony transcript. (J.A. 339.) To preserve an objection on appeal, a party must object on the specific grounds raised on appeal, and "a general objection or an objection on other grounds will not suffice." *United States v. Gallo-Chamorro*, 48 F.3d 502, 507 (11th Cir. 1995). Furthermore, to the extent the Superior Court committed any error in taking judicial notice of the deposition testimony, Yusuf and United invited this error when they stated that "we intend to offer the entire deposition. As a matter of fact, we submitted a certified copy of the deposition before today's hearing, so it's already in the court record." (J.A. 340); *Castillo v. People*, 59 V.I. 240 (V.I. 2013) (invited error does not provide grounds for reversal).

851

business under the UPA,[6] *see* 26 V.I.C. § 22(c)(3), Hamed also introduced evidence of "a combination of property, skill or knowledge," as well as "joint management and control" in the Plaza Extra stores. *Griffith Energy*, 925 N.Y.S.2d at 283. This evidence included the testimony that Hamed sold his business and invested the proceeds in the construction of Plaza East, that he and Fathi Yusuf jointly managed the store after it opened, and that all three stores continue to be jointly managed by members of the Yusuf and Hamed families.

Yusuf and United argue that despite this evidence, Hamed did not show a reasonable probability of success because the partnership agreement violated the statute of frauds. The Superior Court found that as an at-will agreement of indefinite duration, the partnership agreement did not violate the statute of frauds under 28 V.I.C. § 244(1). As a matter of statutory interpretation, we review this holding *de novo*. *Brady v. Gov't of the V.I.*, 57 V.I. 433, 438 (V.I. 2012). "[M]ost courts have held that the Statute of Frauds does not have any application to a contract of partnership that fixes no definite time for the duration or continuance of the partnership." 72 AM. JUR. 2D *Statute of Frauds* § 31. And this Court has held that the statute of frauds has no application to oral contracts that, while intended to last for more than a year, have no stated durational terms and *could* conclude within a year. *Peppertree Terrace v. Williams*, 52 V.I. 225, 232 n.5 (V.I. 2009) (" 'It is well settled that the oral contracts invalidated by the [s]tatute [of frauds] because they are not to be performed within a year include only those which *cannot* be performed within that period.' " (quoting 9 RICHARD A. LORD, WILLISTON ON CONTRACTS § 24-3 (4th ed. 1999))); *see also Smith v. Robson*, 44 V.I. 56, 62 (V.I. Terr. Ct. 2001) ("It is immaterial that the performance of the

---

[6] At oral argument, counsel for Yusuf and United described the payment of Plaza Extra profits to Hamed as an "annuity," which would serve to rebut this presumption. 26 V.I.C. § 22(c)(3)(iv). But Yusuf and United presented no evidence to support this assertion during the hearings, and did not raise this argument until oral argument before this Court. *See Allen v. HOVENSA*, S. Ct. Civ. No. 2010-0053, 2013 V.I. Supreme LEXIS 39, *8 (V.I. July 31, 2013) (holding that arguments presented for the first time at oral argument are waived). Similarly, Yusuf and United characterize Yusuf and Hamed's relationship as a "joint venture," but — aside from this repeated assertion — they have waived this argument by failing to cite any authority or make any substantive arguments regarding joint ventures. V.I.S.CT.R. 22(m). And given that "[r]elationships that are called 'joint ventures' are partnerships if they otherwise fit the definition of a partnership," this argument lacks any merit. UNIF. PARTNERSHIP ACT 1997 § 202 cmt. 2.

contract *actually* exceeds one year. . . . [A] contract for lifetime employment need not be in writing because the employee's death could occur at any time." (citing *Cooper v. Vitraco, Inc.*, 320 F. Supp. 239, 8 V.I. 112 (D.V.I. 1970))).[7] Accordingly, because the Superior Court found that the partnership is an indefinite at-will agreement — a finding that Yusuf and United do not challenge — the statute of frauds is not implicated.

■ Finally, Yusuf and United argue that the evidence only establishes competing inferences regarding the existence of a partnership agreement that must be resolved by a jury. While they are correct that a jury will ultimately have to determine the factual issues presented in this case, it is appropriate — and necessary — for the trial judge to make findings of fact in deciding a preliminary injunction. *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395, 101 S. Ct. 1830, 68 L. Ed. 2d 175 (1981). These findings are only for the purposes of the injunction, and do not bind the jury. *Id.* ("the findings of fact and conclusions of law made by a court granting a preliminary injunction are not binding at trial on the merits"); *see also William G. Wilcox, D.O., P.C. Employees' Defined Ben. Pension Trust v. United States*, 888 F.2d 1111, 1114 (6th Cir. 1989) ("As a general rule, decisions on preliminary injunctions do not constitute law of the case and 'parties are free to litigate the merits.' " (quoting *Golden State Transit Corp. v. City of L.A.*, 754 F.2d 830, 832 n.3 (9th Cir. 1985))); *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000). Accordingly, in light of the evidence presented at the hearings, the Superior Court did not err in holding that Hamed had established a reasonable probability of success on the merits of his partnership claim, as he introduced evidence that he invested in the construction of Plaza East, that he continues to receive one-half of the profits from the Plaza Extra stores, and that each store is jointly managed by members of both the Yusuf and Hamed families.

### 2. *Likelihood of irreparable harm to Hamed*

The Superior Court next held that Hamed had established that he was likely to suffer irreparable harm, as the case — while also concerning

[7] The cases cited by Yusuf and United are clearly distinguishable on this point. For example, *Ebker v. Tan Jay Int'l, Ltd.*, 739 F.2d 812, 827 (2d Cir. 1984), applied the statute of frauds to an agreement with "a stated term of five years," and *Fountain Valley Corp. v. Wells*, 98 F.R.D. 679, 683, 19 V.I. 607 (D.V.I. 1983), applied the statute of frauds to an agreement to purchase property, an issue not implicated here.

money damages — implicated Hamed's legal rights to equal participation in the management of the business, "reflect[ing] his loss of control of the reputation and goodwill of the business which constitute irreparable injury, not compensable by an award of money damages." (J.A. 24.) Yusuf and United argue that "[a]ny meaningful review of the record evidence shows that this commercial dispute concerns only money," and therefore Hamed cannot show that he is likely to suffer irreparable harm. (Appellants' Br. 20.)

■ Irreparable harm is "certain and imminent harm for which a monetary award does not adequately compensate." *Wisdom Imp. Sales Co. v. Labatt Brewing Co.*, 339 F.3d 101, 114 (2d Cir. 2003); *see also Danielson v. Local 275, Laborers Int'l Union of N. Am., AFL-CIO*, 479 F.2d 1033, 1037 (2d Cir. 1973) ("Irreparable injury is suffered where monetary damages are difficult to ascertain or are inadequate."). Thus, when "the record indicates that [a plaintiff's loss] is a matter of simple mathematic calculation," a plaintiff fails to establish irreparable injury for preliminary injunction purposes. *Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co.*, 22 F.3d 546, 551-52 (4th Cir. 1994) (quoting *Graham v. Triangle Pub.*, 344 F.2d 775, 776 (3d Cir. 1965)).

■ Hamed argues that the Superior Court properly found that Yusuf's interference with Hamed's right to equal management of the business constituted irreparable harm. The UPA establishes that "[e]ach partner has equal rights in the management and conduct of the partnership business," 26 V.I.C. § 71(f), and although the loss or interference with a party's right to control a business implicates money damages, courts have recognized that it can also constitute irreparable harm. *Gitlitz v. Bellock*, 171 P.3d 1274, 1280 (Colo. App. 2007) (the "loss of a contractual right to manage and control a business may constitute irreparable harm[ and] monetary damages are an inadequate remedy for such a loss"). This is because a party's right to control a business "has intrinsic value" that cannot be compensated by money damages. *Wisdom Imp. Sales*, 339 F.3d at 114 (holding that irreparable harm was established where a partner was excluded from exercising management rights); *see also Mack v. Davis*, 2013 Guam 13 ¶ 23 ("Diluting a party's ownership in a company, which results in loss of control of a business, may constitute irreparable injury.") (collecting cases).

■ Given this standard, the Superior Court did not clearly err in finding that Hamed was likely to suffer irreparable harm absent an injunction in light of the evidence that Yusuf attempted to unilaterally fire employees, including Hamed's sons Mufeed and Waleed,[8] repeatedly threatened to close down the stores, increased the rent for Plaza East in an attempt to evict the store from its location in United's shopping center, and removed $2.7 million from a Plaza Extra operating account over Hamed's objections, violating the two-signature requirement. In addition to this, after the Superior Court proceedings but before the court issued its order, Fathi Yusuf instructed the bank to deny Hamed access to Plaza Extra accounts and revoked the signature authorization of Hamed family members.[9] This evidence of Yusuf's course of conduct, which was ongoing during the litigation, supported the Superior Court's finding that Yusuf had interfered with Hamed's management rights in Plaza Extra by making decisions on business operations without consulting Hamed, and at times doing so with the purpose of excluding Hamed from participating in the management of the business. *See Wisdom Imp. Sales*, 339 F.3d at 114 (affirming a finding of irreparable harm where nonmoving party's actions had allowed "the vast majority of [the business]'s day-to-day business affairs [to] be conducted with or without the consent of the [entity's] directors" in violation of their contractual management rights); *Int'l Equity Investments, Inc. v. Opportunity Equity Partners*, 427 F. Supp. 2d 491, 498 (S.D.N.Y. 2006) ("[c]onduct that unnecessarily frustrates efforts to obtain or preserve the right to participate in the management of

---

[8] With regard to the attempted termination of Wadda Charriez, Yusuf and United elicited a significant amount of testimony regarding the alleged misconduct that warranted Charriez's termination, testimony Yusuf and United repeatedly refer to in their appellate brief. But this argument entirely misses the point. Whether or not a particular management decision was justified given the circumstances is not at issue in this appeal, just as it was not at issue before the Superior Court. Instead, the issue is whether Fathi Yusuf's unilateral decision to terminate Charriez and other employees without consulting Mohammad Hamed violated his partnership rights to co-manage the business.

[9] This evidence of Yusuf's post-hearing conduct was brought to the Superior Court's attention through a motion to supplement the record with an affidavit from Waleed Hamed. The court granted the motion over Yusuf and United's objection. Although Yusuf and United recount their objections to the motion in their appellate brief's "Statement of the Case," they do not make any arguments to this Court regarding the admissibility of this evidence, and therefore we do not address whether this evidence was properly admitted. *See George v. People*, 59 V.I. 368 n.3 (V.I. 2013) (holding that an issue referred to outside of the argument section of an appellate brief, but not argued in the brief, is waived).

a company, may constitute irreparable harm" (alteration in original; internal quotation marks omitted)), *aff'd*, 246 F. App'x 73 (2d Cir. 2007). In light of this evidence, the Superior Court did not clearly err in finding that irreparable harm was likely, given that Hamed's loss of control of a business that he has the legal right to co-manage "would be irreparable by its very nature." *Simenstad v. Hagen*, 22 Wis. 2d 653, 126 N.W.2d 529, 535 (Wis. 1964).

### 3. *Likelihood of irreparable harm to Yusuf and United*

The Superior Court found that injunctive relief would not inflict even greater harm on Yusuf and United as the nonmoving parties, as it would not deprive Yusuf of his rights in the business, but "simply assure[] that Hamed is not deprived of the same legal rights to which he is entitled." (J.A. 25.) Yusuf and United argue that this finding "effectively stripped United of virtually all its assets and its income stream, and devolved the assets and income stream to a disputed, at-will, oral partnership," (Appellants' Br. 28), "turn[ing] the status quo on its head." (Appellants' Br. 29.)

▮ In determining whether Yusuf and United will be harmed by the injunction, the Superior Court was required to examine "whether, and to what 'extent[,] . . . the [the nonmoving parties] will suffer irreparable harm if the preliminary injunction is issued.' " *Kos Pharms., Inc. v. Andrx Corp..*, 369 F.3d 700, 727 (3d Cir. 2004) (quoting *Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 192 (3d Cir. 1990)) (alteration and ellipsis in original). Yusuf and United argue that they are harmed by the injunction because it destroys the status quo, giving Hamed management rights he did not previously have.[10] As the Superior Court observed, "[o]ne of the goals of the preliminary injunction analysis is to maintain the status quo, defined as 'the last, peaceable, noncontested status of the parties.'" (J.A. 25 (quoting *Opticians*, 920 F.2d at 197).) We cannot say here that the Superior Court clearly erred in finding that the

---

[10] Yusuf and United argue in passing that the injunction "pierced the corporate veil," (Appellants' Br. 29), an argument they also raised in their filings with the Superior Court. But their appellate brief only references this argument once in a single sentence, with citation to a single case and no explanation or argument regarding its applicability to this appeal. Therefore, this argument is waived. V.I.S.CT.R. 22(m) ("Issues that . . . are only adverted to in a perfunctory manner or unsupported by argument and citation to legal authority, are deemed waived for purposes of appeal.").

injunction maintained the status quo by assuring that Hamed retained equal control over the business pending trial. Although the evidence regarding the extent of Hamed's control over Plaza Extra's operations was contested at the hearings, there was no dispute that each Plaza Extra store has two or more co-managers, at least one from the Yusuf family and one from the Hamed family. There was also testimony that in 2009 or 2010, Yusuf and Hamed "came to an agreement" that all funds distributed from Plaza Extra accounts required two signatures, one from a manager from the Yusuf family, and one from a manager from the Hamed family. (J.A. 432.) The testimony presented by Yusuf and United contradicted this in part, with Mahar Yusuf testifying that Fathi Yusuf imposed the two-signature system only to ensure that members of the Hamed family did not remove funds without his knowledge. But despite this conflicting evidence, there is evidentiary support for the Superior Court's finding that Yusuf and United would not be harmed by the injunction because it merely maintained the status quo, requiring two signatures from a member of each family to distribute funds and preserving the co-management of the stores between the families. Therefore, we cannot say that any of the Superior Court's findings were "completely devoid of minimum evidentiary support or bear[ ] no rational relationship to the supportive evidentiary data." *In re Estate of Small*, 57 V.I. 416, 430 (V.I. 2012) (identifying the standard for holding a finding of fact to be clearly erroneous) (quoting *Rainey v. Hermon*, 55 V.I. 875, 880 (V.I. 2011)) (internal quotation marks and alteration omitted). And despite Yusuf and United's dire assertions that the injunction renders United "effectively insolvent," (Appellants' Br. 28-29), they cite nothing to support this and never raised this argument or presented evidence to this effect before the Superior Court. Accordingly, the Superior Court did not err in finding that Yusuf and United would not be harmed by the preliminary injunction.

### 4. *Public interest*

Finally, the Superior Court found that the public interest was best served "by the continued success of Plaza Extra Supermarkets, or . . . by the orderly dissolution or winding down of the business relationship," and the "continued employment of 600 Virgin Islanders and the continuity of this Virgin Islands institution operated according to law and [the parties'] agreement." (J.A. 26.) " 'In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in

857

employing the extraordinary remedy of injunction.' " *Winter*, 555 U.S. at 24 (quoting *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312, 102 S. Ct. 1798, 72 L. Ed. 2d 91 (1982)). In considering the public interest, courts should seek to prevent the parties from halting "specific acts presumptively benefiting the public . . . until the merits [can] be reached and a determination made as to what justice require[s]." *Cont'l Grp., Inc. v. Amoco Chemicals Corp.*, 614 F.2d 351, 358 (3d Cir. 1980).

Yusuf and United's argument on this factor amounts to a single sentence: "Because the injunction is completely unworkable and legally deficient, every employee likely will be terminated upon the partnership's dissolution." (Appellants' Br. 29-30.) Yusuf and United provide no citation to any legal authority, point to no evidence in the record, and completely fail to identify any finding that is "completely devoid of minimum evidentiary support or . . . bears no rational relationship to the supportive evidentiary data." *Estate of Small*, 57 V.I. at 430. This lack of citation to legal or evidentiary support demonstrates that "the consequences predicted . . . are speculative, hyperbolic, and almost entirely of the [parties'] own making." *NML Capital, Ltd. v. Republic of Argentina*, 727 F.3d 230, 2013 U.S. App. LEXIS 17645, *33, 2013 WL 4487563, at *8 (2d Cir. Aug. 23, 2013) (rejecting public interest arguments where the party "failed to present the [trial] court with any record evidence to support its assertions"). Furthermore, although "[p]ublic interest can be defined a number of ways," *Opticians*, 920 F.2d at 197,[11] the Superior Court appropriately identified the success of Plaza Extra and the continued employment of 600 Virgin Islanders as significant public interests. *See Miller for & on Behalf of N.L.R.B. v. California Pac. Med. Ctr.*, 991 F.2d 536, 545 (9th Cir. 1993) (identifying employee layoffs as one of the "weighty concerns" a court should take into account in issuing an injunction); *Lineback v. Chauffeurs, Teamsters, & Helpers Local Union No. 414*, 513 F. Supp. 2d 988, 999 (N.D. Ind. 2007) (finding

---

[11] *See generally* Orin H. Lewis, *"The Wild Card That Is the Public Interest": Putting A New Face on the Fourth Preliminary Injunction Factor*, 72 Tex. L. Rev. 849, 854 (1994) (examining the widely varying conceptions of "public interest" in federal case law); *see also American Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1427 n.8 (3d Cir. 1994) ("As a practical matter, if a plaintiff demonstrates both a likelihood of success on the merits and irreparable injury, it almost always will be the case that the public interest will favor the plaintiff.").

that preventing the potential loss of business, jobs, and tax revenue in a community weighed in favor of granting a preliminary injunction).

 ■ Therefore, because the Superior Court did not err in finding that Hamed has a reasonable probability of success on the merits, that he would likely suffer irreparable harm absent an injunction, that Yusuf and United would not be harmed by the injunction, and that the injunction is in the public interest, the Superior Court did not abuse its discretion in granting the preliminary injunction. Consequently, we affirm the portion of the Superior Court's April 25, 2013 Order granting the preliminary injunction.

## B. Injunction Bond

 The Superior Court's April 25, 2013 Order directed Hamed to post a $25,000 bond with the Clerk of the Superior Court and ordered that Hamed's interest in the approximately $43 million in Plaza Extra profits held in escrow by the District Court to "serve as additional security to pay any costs and damages incurred by [Yusuf and United] if found to have been wrongfully enjoined." (J.A. 4.) Yusuf and United argue that the Superior Court erred in setting the bond because it is insufficient and "illusory." (Appellants' Br. 32-35.) This Court reviews the Superior Court's determination of bond for an abuse of discretion. *Sprint Commc'ns Co. L.P. v. CAT Commc'ns Int'l, Inc.*, 335 F.3d 235, 239 (3d Cir. 2003).

 ■ Yusuf and United argue that using the funds held in escrow as security was improper because the funds are held by the District Court as part of the ongoing criminal action. These funds are currently frozen and have not been distributed since 2003, and as of the time of this appeal remain outside of the parties' control.[12] Federal Rule of Civil Procedure 65(c) provides that a court may issue a preliminary injunction "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been

---

[12] The restraining order preventing the parties from accessing these funds will remain in place until United's sentencing in District Court. According to the District Court docket entries, the sentencing hearing was initially scheduled for July 16, 2013, but was continued to an undetermined date. *United States v. United Corporation*, Crim. No. 2005-0015, docket entry no. 1379 (D.V.I. July 16, 2013) ("[s]entencing hearing held and continued to a date to be set by the [c]ourt").

wrongfully enjoined or restrained." The purpose of this security is to guarantee that the enjoined party will be compensated for the expenses of complying with an erroneously issued injunction, as well as placing the moving party on notice of the maximum amount of compensation it could be forced to pay. *Sprint*, 335 F.3d at 240. Because "[i]t is generally settled that, with rare exceptions, a defendant wrongfully enjoined has recourse only against the bond," *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 804 (3d Cir. 1989) (collecting cases), "courts should err on the high side" in setting the amount of security. *Mead Johnson & Co. v. Abbott Laboratories*, 201 F.3d 883, 888 (7th Cir. 2000).

 In light of these considerations, the Superior Court abused its discretion in using the funds held by the District Court as security for the preliminary injunction. These funds are outside of both Hamed's and the Superior Court's control and may only be accessed by the parties in limited circumstances. Further, the record is unclear as to how much of this money will remain once the criminal proceedings have concluded, as the plea agreement in that case indicates that these funds are to be used to pay "(a) restitution; (b) fine; and (c) substantial monetary penalty. After sentencing, the Government agrees to release all lis pendens, restraining orders, liens, or other encumbrances or property *except to the extent necessary to assure valid security for payments of all amounts referenced above*." (J.A. 1101 (emphasis added).) Given the uncertain availability of these funds, they cannot adequately "assure[] the enjoined party that it may readily collect damages from the funds posted or the surety provided in the event that it was wrongfully enjoined, without further litigation and without regard to the possible insolvency of the assured." *Continuum Co. v. Incepts, Inc.*, 873 F.2d 801, 803 (5th Cir. 1989).

The status of these funds, held in escrow outside of the court's control, stands in contrast to situations in which the security is held in escrow pursuant to an order of the enjoining court, in which case the enjoining court itself could allow a wrongfully enjoined party access to the restricted funds at any time. *See, e.g., Anthony v. Texaco, Inc.*, 803 F.2d 593, 599 (10th Cir. 1986) (affirming security of $350,000 that the enjoining court ordered to be held "in an interest-bearing escrow account"); *Scarcelli v. Gleichman*, 2:12-CV-72-GZS, 2012 U.S. Dist. LEXIS 57776, *14, 2012 WL 1430555, at *5 (D. Me. Apr. 25, 2012) (unpublished) (allowing funds held in "escrow established by this injunction" to serve as security). Here, the Superior Court cannot release

860

the funds held pursuant to the District Court's order, and therefore is unable to assure that Yusuf and United can "readily collect damages" in excess of the $25,000 bond in the event that they ultimately succeed on the merits. Accordingly, ordering the funds held by the District Court to be used as part of the injunction bond constituted an abuse of discretion, and we vacate the portion of the Superior Court's order directing these funds to serve as security. Because the Superior Court's decision to set the $25,000 cash bond was premised on these funds serving as additional security, we remand for the Superior Court to consider whether additional bond is required in light of this holding.[13]

## IV. CONCLUSION

The Superior Court did not err in finding that Hamed has a reasonable probability of success on the merits, that the likelihood of irreparable harm to Hamed absent the injunction is greater than the harm Yusuf and United will face as a result of the injunction, and that granting the injunction is in the public interest. Therefore, the Superior Court did not abuse its discretion in issuing the preliminary injunction. Nevertheless, the Superior Court did abuse its discretion in ordering that funds outside of Hamed's and the Superior Court's control serve as security. Accordingly, we affirm the portion of the Superior Court's April 25, 2013 Order granting Hamed's motion for a preliminary injunction, but vacate the portion of the order using funds held by the District Court as security and remand for reconsideration of the injunction bond.

---

[13] Yusuf and United also argue that the Superior Court erred in finding they had admitted that Hamed is entitled to fifty percent of the Plaza Extra profits. But because we remand for the reasons outlined above, we do not reach the question of whether Yusuf and United admitted that Hamed is entitled to these funds for the purposes of the preliminary injunction proceedings. Further, Yusuf and United also argue that the Superior Court was required to hold a separate bond hearing, but Rule 65 imposes no such requirement, and the cases cited in their appellate brief do not support this argument. *See Howmedica Osteonics v. Zimmer Inc.*, 461 Fed. Appx 192, 198 (3d Cir. 2012) (remanding for hearing where trial court failed to set bond at all); *Deborah Heart & Lung Ctr. v. Children of World Found.*, 99 F. Supp. 2d 481, 495 n.2 (D.N.J. 2000) (indicating that the court would hold a separate bond hearing at a later date); *EH Yacht, LLC v. Egg Harbor, LLC*, 84 F. Supp. 2d 556, 572 (D.N.J. 2000) (same); *Doebler's Pa. Hybrids, Inc. v. Doebler*, 2003 U.S. Dist. LEXIS 27098, at *5-6 (M.D. Pa. 2003) (granting motion for reconsideration where court failed to require bond). We leave it to the Superior Court's discretion to determine whether a hearing is necessary on remand.