**ALLISON PETRUS, SURTEP ENTERPRISES, INC., and THE GOVERNMENT OF THE VIRGIN ISLANDS, Appellants/Defendants**

**v.**

**QUEEN CHARLOTTE HOTEL CORPORATION, Appellee/Plaintiff**

S. Ct. Civ. No. 2011-0083

Supreme Court of the Virgin Islands

April 10, 2012

APPEARANCES:[1]

CLIVE RIVERS, ESQ., Law Offices of Clive Rivers St. Thomas, USVI, *Attorney for Appellants Allison Petrus & Surtep Enterprises, Inc.*

MARK D. HODGE, ESQ., Law Offices of Hodge and Francois, St. Thomas, USVI, *Attorney for Appellee.*

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice.*

## OPINION OF THE COURT

(April 10, 2012)

CABRET, *Associate Justice.* In this case, Appellants Allison Petrus and Surtep Enterprises, Inc. (collectively "Surtep") leased land in Kronprindsens Gade on St. Thomas from the Government of the Virgin Islands. The leased land is bordered on the north by an unpaved right of way parcel not leased by Surtep but also owned by the Government.

---

[1] Although represented before the trial court by an attorney, no attorney entered an appearance on behalf of the Government of the Virgin Islands before this Court and no brief was filed by the Government.

Immediately to the north of the right of way parcel is Appellee Queen Charlotte Hotel's property, which is fenced and has two gates that let out onto the right of way parcel used by Queen Charlotte's tenants for access to the property. During the development of the parcels leased from the Government, Surtep blocked access to Queen Charlotte's property through its two southern gates that let out onto the right of way parcel. Queen Charlotte brought an action seeking injunctive relief, declaratory relief, and damages. On September 2, 2011, the Superior Court granted Queen Charlotte a preliminary injunction preventing Surtep from continuing to block access to the southern gates of Queen Charlotte's property. In its order, the Superior Court determined that Queen Charlotte had a reasonable likelihood of succeeding on the merits that either (1) Queen Charlotte is a third party beneficiary to the lease between Surtep and the Government which provides that Surtep may not block access to "space adjacent" to its leased premises or nearby "streets, ways and walks" or (2) Queen Charlotte has an implied easement by estoppel over the unpaved right of way parcel. On appeal, Surtep contests both of these findings. For the reasons that follow, we affirm the Superior Court's September 2, 2011 order issuing the preliminary injunction.

## I. FACTS AND PROCEDURAL BACKGROUND

On March 27, 1960, Queen Charlotte purchased both parcel 47B and 47C of Kronprindsens Gade from Virgin Islands Distillers, Inc. Subsequently, although it is not clear in the record when, Queen Charlotte further subdivided parcels 47B and 47C, with the two southernmost sublets, which are the two involved in the instant dispute, being designated as 47B-3 and 47C-2. To the south of Queen Charlotte's property is parcel 47E of Kronprindsens Gade, which is owned by the Government of the Virgin Islands. In 2002, the Government subdivided Parcel 47E of Kronprindsens Gade into sublets 47E-1 through 47E-8. Sublet 47E-8 was designated as the "right of way" parcel. Since at least 1977, Queen Charlotte and its assorted tenants have used the land now designated as sublet 47E-8 for access to its property from Veteran's Drive through two gates that lead onto 47B-3 and 47C-2.[2] Below is a surveyor's

---

[2] There is additional access to parcel 47C-2 from the east, which leads to a public road, but which Queen Charlotte and GEC, LLC (one of Queen Charlotte's tenants) claim is not a feasible point of access for unloading the large trucks used by Queen Charlotte's tenants.

map provided by the parties for reference, with north facing the top of the page

In 2008, Surtep entered into a fifty year lease with the Government for sublets 47E-2, E-3, E-4, E-5, and E-7 for the purpose of building and maintaining a gas station and retail center on the property. For the first two years of the lease, which Surtep considers the "construction phase" of the lease, the lease provides that Surtep would pay a reduced monthly rent. The lease did not provide Surtep with any explicit right to use or improve the right of way sublet 47E-8. However, on February 8, 2009 Surtep received a Coastal Zone Management ("CZM") Permit which provided Surtep with authorization to commence construction of the gas station on the leased premises. In the permit, the CZM, on behalf of the Department of Planning and Natural Resources ("DPNR") of the Government of the Virgin Islands, provided Surtep with the authority to pave and make other "surface improvements" to the right of way sublet 47E-8.

On March 23, 2011, Queen Charlotte filed a complaint in the Superior Court alleging that Surtep had blocked access to Queen Charlotte's property by placing a large pile of dirt in front of one of the gates that

opens from Queen Charlotte's property onto the right of way sublet 47E-8. Additionally, Queen Charlotte alleges that Surtep blocked access to most of the right of way sublet with heavy equipment. In its complaint, Queen Charlotte seeks permanent injunctive relief to prevent blockage of the right of way sublet 47E-8, declaratory relief that Surtep is in violation of its CZM permit and that its current plans to improve the right of way sublet 47E-8 will create drainage problems on Queen Charlotte's property, and damages for creating public and private nuisances and for tortious interference with Queen Charlotte's contracts with its tenants.

On March 25, 2011, Queen Charlotte filed a motion for a Temporary Restraining Order to require that Surtep stop blocking the right of way sublet 47E-8 and cease all construction on 47E-8 immediately. On March 28, 2011, after a hearing, the Superior Court granted Queen Charlotte's motion and scheduled another hearing to take testimony from the parties before considering whether to issue a preliminary injunction.

The preliminary injunction hearing was held on April 14 and 15, 2011. On April 14, 2011, Queen Charlotte first called Vera Davis, who works as the general manager at the Queen Charlotte property. Davis testified that she had worked for Queen Charlotte since 1977, and in that time, Queen Charlotte and its tenants had continuously used the right of way sublet now designated 47E-8 to access the property. She also testified that Surtep, even after the Temporary Restraining Order was issued, continued to block access to one of the gates leading onto Queen Charlotte's property and left obstructions, including equipment, in the right of way sublet. After Davis, Queen Charlotte called John Wessel, who works for GEC, LLC, one of Queen Charlotte's tenants. Wessel testified that GEC, the tenant who primarily used the gate blocked by Surtep in the right of way sublet 47E-8, was unable to access its loading dock specially built to unload forty foot trailers because the gate was blocked by dirt. Wessel testified that the inability to use the specially made loading dock would cost GEC approximately $100,000-$150,000 a year, more than the value of the lease with Queen Charlotte.[3]

---

[3] Queen Charlotte also called Harry Gauriloff, a certified land surveyor, and had him testify as an expert, but his testimony primarily concerned allegations that Petrus was in violation of its CZM permit and that Queen Charlotte's parcels were once waterfront prior to the Government filling the land that is now labeled parcel 47E and Veterans Drive. Those allegations are not before this Court on appeal.

On April 15, 2011, the Superior Court began the day by making a site visit on the record to see the premises, including the mound of dirt blocking one of the gates. Then the Superior Court resumed taking testimony, starting with the Government of the Virgin Islands. The Government called Jean-Pierre Ortiol, as an agent of the Government and the director of the CZM, to testify. Ortiol testified that the purpose of creating the right of way sublet 47E-8 was to provide access to the road for the other sublets of 47E, but not necessarily for the purpose of providing 47B and 47C with access, since they had another access on the eastern side of parcel 47C. Additionally, Ortiol testified that, although Surtep was not in violation of the CZM permit, it should not block Queen Charlotte's access to the right of way sublet 47E-8 based on its lease with the Government. After Ortiol completed his testimony, the Government rested and Surtep called its witnesses, including Allison Petrus.[4] Petrus, one of the principals in Surtep Enterprises, Inc., largely reiterated the facts alleged by Queen Charlotte — that in the context of preparing to build on the leased sublets and pave and improve the right of way sublet 47E-8 a mound of dirt blocked one of the entrances to Queen Charlotte's property and that the right of way itself was partially blocked by equipment and materials.[5] Petrus also admitted that Surtep had no right under the lease to block Queen Charlotte's use of the right of way sublet 47E-8 or to block the gates leading onto the sublet from Queen Charlotte's property. Following Petrus's testimony, the Superior Court concluded the hearing and gave each party fourteen days to file supplemental briefs.

On September 2, 2011, the Superior Court granted Queen Charlotte's motion and entered a preliminary injunction against Surtep requiring that it cease blocking access to the gates leading to sublets 47B-3 and 47C-2 and that it not block access over sublet 47E-8. Eighteen days later, on September 20, 2011, Surtep filed a timely notice of appeal to this Court. *See* 4 V.I.C. § 33(d)(5) (requiring certain notices of appeal to be filed within thirty days of an interlocutory order); 4 V.I.C. § 33(b) (permitting this Court to hear interlocutory appeals of injunctions); *First Am. Dev.*

---

[4] Surtep also called two land surveyors, both of whom testified to issues outside the scope of the current appeal.

[5] Petrus denied Queen Charlotte's allegation, irrelevant for the purposes of this appeal, that he told Queen Charlotte and its tenants that he was permitted to block the right of way sublet 47E-8 at his whim.

*Group/Carib, LLC v. WestLB AG*, 55 V.I. 594, 610 (V.I. 2011) ("[T]he Legislature intended for the thirty-day period for filing a notice of appeal set forth in section 33(d)(5) to apply to all appeals authorized by sections 33(b) and (d) . . . .").

## II. JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction over "[i]nterlocutory orders of the Superior Court of the Virgin Islands . . . granting, continuing, modifying, refusing or dissolving injunctions." 4 V.I.C. § 33(b)(1). This Court, then, has jurisdiction to review the September 2, 2011 injunction as an interlocutory order, while the remaining claims in the underlying action remain unresolved. *See In re Najawicz*, 52 V.I. 311, 324-25 (V.I. 2009).

Generally, the Supreme Court reviews the Superior Court's findings of fact for clear error, while the review of the Superior Court's conclusions of law is plenary. *See Mercer v. Bryan*, 53 V.I. 595, 598 (V.I. 2010). The decision to grant or deny an injunction, however, is reviewed for abuse of discretion. *In re Najawicz*, 52 V.I. at 328; *see also Stevens v. People*, 55 V.I. 550, 552 (V.I. 2011) ("An abuse of discretion 'arises only when the decision rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact.' " (quoting *Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003))).

## III. DISCUSSION

■ Before the Superior Court may grant a motion for a preliminary injunction, it must consider:

> (1) whether the movant has shown a reasonable probability of success on the merits; (2) whether the movant will be irreparably injured by denial of the relief; (3) whether granting preliminary relief will result in even greater harm to the nonmoving party; and (4) whether granting the preliminary relief will be in the public interest.

*Iles v. de Jongh*, 638 F.3d 169, 172, 55 V.I. 1251 (3d Cir. 2011) (quoting *McTernan v. City of York*, 577 F.3d 521, 526 (3d Cir. 2009)). Although the Superior Court addressed all four elements in its order, Surtep only challenges the Superior Court's ruling as to the first element of the preliminary injunction standard — the reasonable probability of success on the merits of Queen Charlotte's claims. Specifically, Surtep challenges the Superior

Court's determination that Queen Charlotte showed a reasonable probability of success on the merits of its arguments that either (1) Queen Charlotte is a third party intended beneficiary to the lease between Surtep and the Government which provides that Surtep may not block access to "space adjacent" to its leased premises or nearby "streets, ways and walks" or (2) Queen Charlotte has an implied easement by estoppel over the unpaved right of way parcel. Because we find the first issue dispositive, we do not reach the second.

In the lease for sublets 47E-2, E-3, E-4, E-5, and E-7 between Surtep, as tenant, and the Government, as landlord, paragraph eleven states:

> The Tenant shall not do nor permit anything to be done which will interfere with the free access and passage of others to space adjacent to the premises or in any streets, ways and walks near the premises, nor interfere with the free access to the shoreline by the public.

(J.A. 143.) The Superior Court determined, based on the foregoing paragraph, that Queen Charlotte was an intended beneficiary under the lease that could sue to enforce Surtep's promise to not interfere with free access and passage to adjacent spaces. On appeal, Surtep argues that the lease's reference to "others" in paragraph eleven refers only to the lease holders of the 47E sublets and that the language concerning the public's access to the shoreline is "a generic term in all Government leases" and thus should be interpreted to have no meaning. (Appellant Br. 24.)

 Normally, only a promisee under a contract can sue to enforce its promises. *Tomlinson v. Board of Education of the City of Bristol*, 226 Conn. 704, 629 A.2d 333, 341 (Conn. 1993). However, a third party that was an intended beneficiary of the promise may also bring an action to enforce a promise in the contract, even though they did not sign the contract. *See* RESTATEMENT (SECOND) OF CONTRACTS § 304 ("A promise in a contract creates a duty in the promisor to any intended beneficiary to perform the promise, and the intended beneficiary may enforce the duty."). On the other hand, a beneficiary to the contract whose benefit is merely incidental to the promise in the contract has no right to sue to enforce the promise. *See id* at § 315.

> To prove intended beneficiary status, the third party must show that the contract reflects the express or implied intention of the parties to the contract to benefit the third party. [When reviewing such a claim, the

court] examine[s] the terms of the contract as a whole, giving them their ordinary meaning. The contract need not name a beneficiary specifically or individually in the contract; instead, it can specify a class clearly intended by the parties to benefit from the contract.

*GECCMC 2005-C1 Plummer St. Office Ltd. Partnership v. JPMorgan Case Bank, Nat. Ass'n*, 671 F.3d 1027, 1033 (9th Cir. 2012) (internal citations and quotation marks omitted). *See also* RESTATEMENT (SECOND) OF CONTRACTS § 302 ("Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and ... the circumstances indicate that the promise intends to give the beneficiary the benefit of the promised performance."). Indeed, " 'one is a[n] [intended] beneficiary when performance of the promise will satisfy an actual[,] supposed[,] or asserted duty of the promisee to the beneficiary.' "[6] *KMART Corp. v. Balfour Beatty, Inc.*, 994 F. Supp. 634, 636, 38 V.I. 251 (D.V.I. 1998) (quoting *District Moving & Storage Co., Inc. v. Gardiner & Gardiner, Inc.*, 63 Md. App. 96, 492 A.2d 319, 322 (Md. Ct. App. 1985)).

█ Here, Queen Charlotte is an intended beneficiary under paragraph eleven of the Surtep/Government lease. By the plain language of paragraph eleven, Surtep promised that it would not "restrict access" to "space adjacent" to its leased premises. The benefit conferred on the owners and tenants of the "space adjacent" to the leased premises is not merely incidental to the promise; rather, it is the main thrust of the promise. Thus, this class of individuals, adjacent space owners, are "clearly intended by the parties to benefit from the contract." *GECCMC 2005-C1 Plummer St. Office Ltd. Partnership*, 671 F.3d at 1033. Queen· Charlotte's property at sublet 47C-2, the gate of which was blocked by Surtep's mound of dirt, is directly adjacent to Surtep's leased premises at sublet 47E-7. We note that both the director of the CZM, Mr. Ortiol, *and*

---

[6] The test for an intended beneficiary is more strenuous when the contract is between a government entity and a private party to provide a service to the public, like maintenance of roads or the provision of water. *See* RESTATEMENT (SECOND) OF CONTRACTS § 313(2). *See also GECCMC 2005-C1 Plummer St. Office Ltd. Partnership*, 671 F.3d at 1033. That more strenuous requirement does not apply here, however, as the Government of the Virgin Islands and Surtep have not entered into a contract to provide a service to the public. Instead, the Government and Surtep have entered into a landlord/tenant relationship the same as any two private parties could. *See* RESTATEMENT (SECOND) OF CONTRACTS § 313(1).

Surtep's principal officer, Mr. Petrus, agreed that Surtep had no right under the lease to block the gate which led from Queen Charlotte's property onto the right of way sublet 47E-8. They also agreed that Surtep had no right to block access from Veteran's Highway onto the right of way sublet 47E-8. Indeed, Mr. Ortiol acknowledged that having the dirt present in front of one of Queen Charlotte's gates was a breach of paragraph eleven of Surtep's lease. Therefore, the Superior Court correctly found that Queen Charlotte had a reasonable likelihood of success of showing that it is an intended beneficiary of Surtep's promise not to restrict the access to spaces adjacent to its leased premises and that Surtep has breached its promise.

Accordingly, we affirm the Superior Court's determination that Queen Charlotte has a reasonable likelihood of success on the merits of its request for permanent injunctive relief, premised on a breach of contract claim, against Surtep.[7] Because Surtep did not challenge any of the other requirements for the Superior Court to issue a preliminary injunction, we need go no further to affirm the September 2, 2011 order.

## IV. CONCLUSION

The Superior Court did not abuse its discretion in issuing the preliminary injunction. The court correctly found that Queen Charlotte met its burden to show that it has a reasonable likelihood of success on the merits in the request for permanent injunctive relief based on the breach of contract claim. Accordingly, because Surtep did not present any claimed error or argument on appeal based on any of the other requirements that must be satisfied to issue a preliminary injunction, we affirm the Superior Court's September 2, 2011 order.

---

[7] Because this is sufficient ground to affirm the Superior Court's order issuing a preliminary injunction, we do not reach the alternative justification provided by the Superior Court concerning the implied easement by estoppel.