**DEBORAH V. APPLEYARD, M.D., Appellant/Plaintiff**

**v.**

**GOVERNOR JUAN F. LUIS HOSPITAL AND MEDICAL CENTER, a corporation of the Government of the Virgin Islands, KENDALL M. GRIFFITH, M.D., individually and as Hospital Chief Executive Officer, RAYMOND CINTRON, M.D., individually and as Chairperson of the Hospital Medical Executive Committee, O. ANNE TREASURE, M.D., individually and as Chairperson of the Medical Staff Quality Committee, MAVIS MATTHEW, M.D., individually and as Interim Chief Medical Officer, and JOHN DOES 1-10, Appellees/Defendants**

S. Ct. Civil No. 2014-0056

Supreme Court of the Virgin Islands

December 2, 2014

579

VINCENT A. COLIANNI II, ESQ., Colianni & Colianni, St. Croix, USVI, *Attorney for Appellant.*

ANTHONY R. KITURE, ESQ., Kiture Law Firm, St. Croix, USVI, *Attorney for Appellees.*

HODGE, *Chief Justice*; SWAN, *Associate Justice*; and FRANCOIS, *Designated Justice.*[1]

## OPINION OF THE COURT

(December 2, 2014)

HODGE, *Chief Justice*. Appellant Deborah Appleyard appeals from the Superior Court's September 5, 2014 order denying her motion for a

---

[1] Associate Justice Maria M. Cabret is recused from this matter. The Honorable Denise M. Francois, a Judge of the Superior Court of the Virgin Islands, has been designated in her place pursuant to title 4, section 24(a) of the Virgin Islands Code.

preliminary injunction to enjoin Appellee Governor Juan F. Luis Hospital ("JFL") from terminating her employment as a member of its medical staff. For the reasons that follow, we affirm.

## I. BACKGROUND

JFL recruited Appleyard — at the time a resident of Charlotte, North Carolina — to serve as an orthopedic/spine surgeon. On August 1, 2011, Appleyard and JFL simultaneously executed two agreements. The first, labelled an employment agreement, stated that it was "effective for three (3) years as of the 1st day of August 2011 . . . and will continue until July 31, 2014." (J.A. 239.) Paragraph 5 of the employment agreement provided that the parties may extend the contract for a period of 30 days. The employment agreement also stated that JFL would pay Appleyard reasonable costs associated with her move from Charlotte to St. Croix, which could not exceed $25,000. It also provided that if Appleyard did not remain employed with JFL for one year she would reimburse 100% of those relocation expenses to JFL; that if she was employed more than one year and less than two years she would return 50% of the relocation expenses, and that if employed for less than three years, she would reimburse 25% of the relocation expenses.

On the same day, Appleyard and JFL also entered into another contract, labelled a relocation agreement, to which another entity — OrthoCaribbean, P.C., a Virgin Islands professional medical corporation — was also a party. Unlike the employment agreement, the relocation agreement stated that it had a four year term, beginning on September 1, 2011, and expiring on July 31, 2015. Among other things, the relocation agreement provided that OrthoCaribbean would be responsible for billing patients on Appleyard's behalf, that JFL would pay a $50,000 signing bonus to OrthoCaribbean, and would guarantee monthly payments in the amount of $16,666.66 for the first 12 months of the contract term. The relocation agreement established a process to determine whether OrthoCaribbean's collections on Appleyard's behalf were lower than this guaranteed monthly payment, and provided that JFL would pay the difference between Appleyard's collections for the previous month and this guaranteed amount. It also provided for a reconciliation process to determine whether JFL paid excess funds to OrthoCaribbean, and provided that OrthoCaribbean would repay any excess funds, together with accrued interest, to JFL within 36 months of the conclusion of the 12

month guarantee period. However, if Appleyard remained in JFL's service area and continued to furnish services in her specialty at the end of this 36-month period, any excess payments received by OrthoCaribbean would be fully forgiven.

During the first two-and-a-half years of her tenure, JFL's Medical Staff Quality Committee considered nine complaints filed against Appleyard, and referred all nine cases to its Medical Executive Committee ("MEC") — the final decision-making body of JFL's medical staff — for further action. The MEC first met with Appleyard on February 24, 2014, and then held a follow-up meeting on March 3, 2014. On March 27, 2014, the MEC, through its chair, Raymond Cintron, informed Appleyard that it concluded that five of the nine cases filed against her were valid, and required Appleyard, within eight weeks, to undergo a psychiatric and psychological evaluation in Florida at JFL's expense. Appleyard, however, never underwent this evaluation.

On July 8, 2014, Cintron wrote a letter to Kendall Griffith — the interim chief executive officer of JFL — advising him that Appleyard had not undergone the evaluations ordered by the MEC, and recommended that she be suspended until she complied with the March 27, 2014 letter. Griffith, in a July 11, 2014 letter, informed Appleyard that she would be suspended immediately until she complied with the MEC's directives. Because Appleyard never obtained a permanent license to practice medicine in the Virgin Islands, but was authorized to practice under the special license provided for in section 38c of title 27 of the Virgin Islands Code,[2] Appleyard proceeded under the assumption that the effect of JFL's suspension was to suspend her license to practice medicine in the Virgin Islands. In a July 18, 2014 letter, Griffith also informed Appleyard that her employment agreement was set to expire on July 31, 2014, and would not be renewed by JFL.

Appleyard filed suit against JFL, Griffith, Cintron, and various other JFL employees in the Superior Court on July 23, 2014. In her complaint, Appleyard alleged that JFL had retaliated against her due to "her

---

[2] Pursuant to subsection (b) of this statute, "a physician who has an unrestricted license to practice in the United States, and who has completed an accredited residency program in his specialty that is approved by the American Medical Association" and who is "board-eligible or board-certified in his specialty" may practice without examination for a five-year period, provided that the physician remains employed by the Virgin Islands government at all times.

outspoken resolve concerning compliance matters," (J.A. 110), and suspended her in violation of her due process rights. Specifically, Appleyard alleged that the disciplinary action against her was retaliation for two separate complaints she had filed in December 2013, one against Griffith's wife — also a physician at JFL — for allegedly failing to properly admit a patient, and another against Dr. Mavis Matthew for purportedly verbally harassing her in the doctor's lounge one evening. In addition to other forms of relief, Appleyard's complaint requested a temporary restraining order and preliminary and permanent injunctions directing her immediate reinstatement and enjoining the reporting of her suspension to any national physician databases.

The Superior Court granted the temporary restraining order on July 28, 2014, without holding a hearing or awaiting a response from JFL. However, it promptly held a preliminary injunction hearing on August 1, 2014, at which JFL appeared through its counsel. At the hearing, Appleyard, among other things, took the position that the employment agreement and relocation agreement should be read as if they were single document, and that the relocation agreement's July 31, 2015 end date should trump the July 31, 2014 end date of the employment agreement. At the end of the hearing, the Superior Court ordered further briefing from the parties, and orally extended the July 28, 2014 temporary restraining order in order to preserve the status quo. The Superior Court, in its September 5, 2014 order, held that Appleyard was not entitled to a preliminary injunction, and accordingly dissolved the earlier temporary restraining order. Appleyard filed her notice of appeal with this Court on September 10, 2014.

## II. DISCUSSION

### A. Jurisdiction

This Court has jurisdiction over "[i]nterlocutory orders of the Superior Court of the Virgin Islands . . . granting, continuing, modifying, refusing or dissolving injunctions." V.I. CODE ANN. tit. 4, § 33(b)(1). Because Appleyard filed her notice of appeal within 30 days of the September 5, 2014 order, this Court possesses jurisdiction over her appeal. *See* 4 V.I.C. § 33(d)(5); *First Am. Dev. Group/Carib, LLC v. WestLB AG*, 55 V.I. 594, 600-02 (V.I. 2011) (holding that the jurisdictional thirty-day filing deadline in section 33(d)(5) applies to appeals under section 33(b)). Thus,

this Court may review the September 5, 2014 order even though the underlying action remains pending before the Superior Court. *Petrus v. Queen Charlotte Hotel Corp.*, 56 V.I. 548, 554 (V.I. 2012) (citing *In re Najawicz*, 52 V.I. 311, 324-25 (V.I. 2009)).

## B. Preliminary Injunction[3]

 As this Court has previously explained,

> In deciding whether to grant a preliminary injunction, the Superior Court must consider four factors:
>
>> (1) whether the movant has shown a reasonable probability of success on the merits; (2) whether the movant will be irreparably injured by denial of the relief; (3) whether granting preliminary relief will result in even greater harm to the nonmoving party; and (4) whether granting the preliminary relief will be in the public interest.

*Yusuf v. Hamed*, 59 V.I. 841, 847 (V.I. 2013) (quoting *Petrus*, 56 V.I. at 554). "A preliminary injunction is an 'extraordinary and drastic remedy' . . . never awarded as of right and may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id.* (quoting *Munaf v. Geren*, 553 U.S. 674, 689-90, 128 S. Ct. 2207, 171 L. Ed. 2d 1 (2008) & *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22, 129 S. Ct. 365, 172 L. Ed. 2d 249 (2008) (internal quotation marks omitted)).

While this Court reviews the Superior Court's overall decision to grant or deny an injunction for abuse of discretion, it reviews the Superior Court's factual findings regarding likelihood of irreparable harm, harm to the nonmoving party, and whether the injunction is in the public interest only for clear error, while exercising plenary review of its conclusions of law. *Petrus*, 56 V.I. at 554 (citing *In re Najawicz*, 52 V.I. at 328). We consider each of the four factors in turn.

---

[3] In its appellate brief, JFL argues that Appleyard's case should be stayed pending completion of arbitration proceedings. However, the record reflects that JFL never moved the Superior Court for a stay pending arbitration, and that the Superior Court did not base its decision to deny Appleyard's motion for a preliminary injunction on that premise. In that context, we decline to entertain this argument for the first time on appeal. *See* V.I.S.CT.R. 4(h) ("Only issues and arguments fairly presented to the Superior Court may be presented for review on appeal.").

### 1. Likelihood of Success on the Merits

In its September 5, 2014 order, the Superior Court held that Appleyard was not likely to succeed on the merits of her claims. As to JFL's decision not to renew her employment agreement, the Superior Court rejected Appleyard's claim that the relocation agreement's July 31, 2015 end date should override the employment agreement's July 31, 2014 expiration date. With respect to the initial suspension of her employment, the Superior Court concluded that JFL's subsequent decision not to renew her employment agreement rendered the matter moot. On appeal, Appleyard asserts that the Superior Court erred as a matter of law with respect to both of these determinations.

#### a. Employment and Relocation Agreements

■ In her appellate brief, Appleyard renews her claim that the relocation agreement's July 31, 2015 expiration date should trump the employment agreement's July 31, 2014 expiration date. Appleyard is correct that, absent specific evidence to the contrary, courts have generally held that when two contracts are executed simultaneously, they should be read together as a single agreement. *See, e.g., In re Pyramid Operating Auth., Inc.*, 144 B.R. 795, 814 (Bankr. W.D. Tenn. 1992) (citing *Joy v. City of St. Louis*, 138 U.S. 1, 11 S. Ct. 243, 34 L. Ed. 843 (1891)); *Pecora v. Szabo*, 94 Ill. App. 3d 57, 418 N.E.2d 431, 436, 49 Ill. Dec. 577 (1981); *Bailey v. Town of Saltville*, 279 Va. 627, 691 S.E.2d 491, 493 (2010); 15 WILLISTON ON CONTRACTS § 44:29 (4th ed. 2000) ("A court may look at an entirely separate contract, if made simultaneously with another, in the same manner as any of the surrounding circumstances as an aid in determining the meaning of the other contract.") (collecting cases).

■ But even if we were to read both the employment and relocation agreements as if they were a single contract, we agree with the Superior Court that there is simply no evidence that the parties intended for the provisions in the employment agreement to expire on July 31, 2015, instead of July 31, 2014. While Appleyard alleges in her brief that "this discrepancy . . . prevents [her] from fully performing her obligations under the relocation agreement," (Appellant's Br. 18-19), the record contains absolutely no evidence that she is required to do anything during

the fourth year of the relocation agreement.[4] Notably, the three-year duration of the employment agreement can be easily reconciled with the four-year duration of the relocation agreement by the fact that a third party — OrthoCaribbean — is a party to the relocation agreement but not the employment agreement, and pursuant to that relocation agreement has three years *after* the one-year guarantee period to repay any excess payments it has received from JFL. As such, Appleyard is incorrect that "refusing to extend the termination date of the employment agreement [would] . . . render the last year of the relocation agreement meaningless," (Appellant's Br. 19), given that OrthoCaribbean possesses a duty to repay any excess payments to JFL within three years of the conclusion of the one-year guarantee period.

### b. Suspension

Appleyard argues that the Superior Court erred in holding that the termination of the employment agreement rendered any issues relating to her July 11, 2014 suspension moot. Specifically, Appleyard argues that "the suspension will remain on her record and [JFL] will report it to [a national database] thereby irreparably damaging her reputation and ability to practice medicine." (Appellant's Br. 15.)

█ We agree that the Superior Court committed error when it held that the subsequent expiration of the employment agreement, standing alone, completely mooted any claim with respect to Appleyard's suspension, in that a wrongful suspension from employment may potentially result in collateral consequences, such as difficulty in obtaining future employment. Nevertheless, the Superior Court's error is harmless because Appleyard has failed to establish a likelihood of success on her claim that JFL suspended her in violation of her due process rights.

---

[4] As noted earlier, the relocation agreement provided that all excess payments by JFL to OrthoCaribbean, including accrued interest, would be fully forgiven if Appleyard remained in JFL's service area and continued to perform services in her specialty. However, nothing in the language of the relocation agreement requires that Appleyard maintain her employment with JFL for a fourth year; rather, the service area language appears to contemplate that she might obtain a permanent license to practice medicine in the Virgin Islands and maintain a private practice in her specialty without being a JFL employee. Moreover, it is OrthoCaribbean, and not Appleyard, that bears the obligation to repay the excess payments to JFL in the event Appleyard does not practice her specialty in JFL's service area for the requisite number of years.

The crux of Appleyard's due process claim is that the manner through which Griffith suspended her violated Article VII, Section 1.3 of JFL's bylaws, and that JFL is incorrect that Article VI, Section 10(g) authorized her suspension for failing to undergo a psychological evaluation. But Appleyard ignores the fact that she had been hired by JFL as a contract employee, and that her employment with JFL was governed by the terms of the employment and relocation agreements. The employment agreement provides that it, "together with the separate collections guarantee agreement" — which the parties refer to as the relocation agreement — "constitutes the entire Agreement between the parties." (J.A. 240.) The relocation agreement, in a section titled "Professional Services and Hospital Policies," states that "[a]ll professional medical services rendered by [Appleyard] during the term of this Agreement shall be rendered in accordance with current professional standards and shall meet all applicable guidelines imposed upon [her] by the medical staff bylaws . . . [and] rules and regulations of [JFL]." (J.A. 244.) Notably, the last sentence of this section provides that "[n]o termination of this Agreement or any other action pursuant to this Agreement shall be deemed to give rise to any hearing, appeal or other rights to [Appleyard] under the bylaws of [JFL]'s medical staff." (*Id.*) It is clear from the plain language of the parties' agreement that JFL had absolutely no obligation to provide Appleyard with a hearing or any other due process rights prior to suspending her employment. As such, any challenge to Appleyard's suspension based solely on JFL's failure to provide her with the same due process rights provided to other medical staff under JFL's bylaws is unlikely to succeed.

### 2. *Irreparable Injury to Appleyard*

The Superior Court found that Appleyard had failed to establish that she would suffer irreparable injury if injunctive relief were denied. According to the Superior Court, the loss of employment, without more, could not constitute irreparable injury, and in any case any harm stemming from the wrongful loss of employment could be adequately compensated with money damages. Additionally, the Superior Court concluded that nothing prevented Appleyard from obtaining a permanent license to practice medicine in the Virgin Islands.

Appleyard challenges the Superior Court's findings solely on the grounds that it departed from its earlier order granting a temporary

restraining order. In its earlier decision, the Superior Court found that Appleyard was likely to suffer irreparable harm absent injunctive relief because her "professional reputation and trade is at risk within the tight-knit St. Croix community if the suspension is unwarranted but allowed to stand." (J.A. 25.) Moreover, the Superior Court found irreparable harm in its order granting a temporary restraining order because "if [JFL] reports the suspension to a national reporting database . . . [her] ability to practice medicine in other jurisdictions where she is licensed, and her ability to obtain a medical license in a new jurisdiction, may be compromised." (*Id.*) According to Appleyard, the Superior Court could only deviate from those earlier findings for a legitimate reason, such as introduction of new evidence.

■ Appleyard's contention that the Superior Court could not deviate from its earlier temporary restraining order findings is without merit. It is well-established that factual findings and conclusions of law made when considering a preliminary matter, such as a motion for a temporary restraining order, are not in any way binding on the court in subsequent proceedings in the same case. *Yusuf*, 59 V.I. at 853 (collecting cases). In fact, the record in this case establishes good cause for the Superior Court departing from its initial findings, in that Appleyard filed her request for a temporary restraining order on July 23, 2014, and the Superior Court granted that emergency relief on July 28, 2014, without holding a hearing and without the benefit of any response from JFL. Having received the benefit of adversarial briefing from JFL — which the Superior Court clearly found persuasive — as well as a full hearing on the request for a preliminary injunction, the Superior Court was permitted to re-weigh the existing evidence and to make new or different factual findings even if JFL did not come forward with any new or contradictory evidence.

■ We also note that the Superior Court based a large part of its original irreparable harm analysis on the suspension of Appleyard's employment being tantamount to a suspension to practice medicine. However, section 38c of title 27 of the Virgin Islands Code provides that

> The Board of Medical Examiners is authorized to grant, without examination, a special unrestricted license for a five-year period. . . . If a physician who is issued a special unrestricted license under this section *is terminated by or resigns* from the Government before the five-year license period expires, his license shall be revoked by the Board

of Medical Examiners from the date of resignation or termination. If the physician remains with the Government for the five-year license period, the Board of Medical Examiners shall waive the examination requirements of this subchapter and issue a permanent license to the physician. Any physician granted a special unrestricted license under this section shall pay a fee of $500.00.

27 V.I.C. § 38c(b) (emphasis added). In this case, it is not readily apparent that a suspension from government employment would constitute a "termination" under this statute. Even if it were construed in such a way, we can find no legal authority to support the proposition that the loss of a special license to practice medicine for reasons unrelated to misconduct would need to be reported to regulators in other jurisdictions.[5] Appleyard does not allege that, had she chosen to voluntarily resign from JFL — an event that also would have resulted in the revocation of her special license — her resignation would need to be reported to other jurisdictions due to her discontinued ability to legally practice medicine in the Virgin Islands.[6] Given that the Superior Court did not address the purported license suspension issue at all in its September 5, 2014 order even though it was heavily emphasized in the earlier order granting a temporary restraining order, it would appear that the Superior Court correctly determined that its earlier finding of irreparable harm was based on a mistaken legal premise, and that Appleyard's suspension from employment was not tantamount to a suspension of Appleyard's medical license which would need to be reported to other jurisdictions.

### 3. *Harm to JFL*

As to the third factor, the Superior Court concluded that there had "been no convincing evidence presented that great harm will be realized

---

[5] For instance, this Court has never construed Supreme Court Rule 202 — an analogous provision granting special licenses to practice law for out-of-Territory attorneys employed by the Government — in a way that would require an individual who has been fired by a Government agency while specially admitted to treat the corresponding loss of his ability to practice law as a *de facto* disbarment.

[6] Although not raised by Appleyard in her brief, we note that 42 U.S.C. § 11133(a)(1)(A) mandates that health care entities report any action "that adversely affects the clinical privileges of a physician for a period longer than 30 days." However, the record in this case reflects that the Superior Court credited the testimony of Dr. Matthew that suspension of employment is not tantamount to suspension of clinical privileges, in that "[y]ou can be a member of the hospital staff, be privileged, but not employed." (J.A. 13.)

by [JFL] were the Court to enjoin [JFL] from failing to renew the expired Employment Agreement." (J.A. 16.) Nevertheless, the Superior Court still determined that an injunction would harm JFL, given the substantial evidence introduced in the record that a "contentious relationship" existed between Appleyard and several members of JFL staff and administration that "would likely harm and burden [JFL], at least to some degree," if JFL were forced to maintain Appleyard's employment. (J.A. 16.)

█ In her appellate brief, Appleyard bases her argument that the Superior Court erred in this finding solely on the fact that the Superior Court's resolution of this factor in considering her motion for a preliminary injunction was different from when it ruled on her *ex parte* application for a temporary restraining order. As explained in the discussion of the irreparable injury factor, the fact that the Superior Court — after having received the benefit of a response from JFL and additional time to consider the matter — weighed the evidence differently cannot, without more, establish a basis for setting aside the Superior Court's decision. As such, we can find no reason to set aside the Superior Court's factual findings as to the third factor.

### 4. Public Interest

Finally, the Superior Court issued what appears to be a contradictory finding as to the public interest factor. The pertinent subsection of the September 5, 2014 order discussing the public interest factor is titled "Granting the relief requested i[s] *not* in the public interest." (J.A. 16 (emphasis added).) However, in the text of this section, the Superior Court noted that Appleyard "is the only spine surgeon on St. Croix and the only full-time resident spine surgeon in the entire territory," and that it "finds that this factor weighs slightly in favor of granting the preliminary injunction, as having a full-time spinal surgeon on St. Croix is certainly a benefit to the community." (*Id.*) Nevertheless, the Superior Court proceeded to state that Appleyard "offer[ed] little in the way of explanation as to the community benefit of [her] being allowed to continue practicing uninterrupted in her present capacity," and noted that "[s]he has not presented evidence as to whether she will be able to obtain her own license to practice medicine absent her employment at [JFL]; how long that licensure process may take; or the alternatives available for treatment of Virgin Islanders in need of spinal orthopedic care in her absence." (J.A. 16-17.) Yet despite making these observations, the

Superior Court again stated that "this factor weights slightly in favor of granting the preliminary injunction." (J.A. 17.) In her appellate brief, Appleyard simply states that the public interest strongly favors injunctive relief, without making any attempt to address the Superior Court's concerns about her failure to present any relevant evidence on those issues.

 Given the contradictory language in the September 5, 2014 order, it is not clear whether the Superior Court intended to rule for or against Appleyard on the public interest factor. But, to the extent the Superior Court intended to weigh the public interest favor in Appleyard's favor, it committed error. Appleyard, as the party seeking an injunction, possessed the burden of proof as to all four factors. *Yusuf*, 59 V.I. at 847. In this case, the record contains no evidence, other than the representation in her complaint, that Appleyard is, in fact, the only spine surgeon in the Virgin Islands. And as the Superior Court itself acknowledged in the September 5, 2014 order, Appleyard failed to present any evidence at all as to why she could not obtain a permanent license to practice medicine in the Virgin Islands — or even obtain a special license through employment with another government agency — or how the absence of a full-time spine surgeon in the Virgin Islands would adversely affect the medical care of Virgin Islanders in need of such treatment. Nor did Appleyard present any evidence that JFL, despite having terminated Appleyard's services, had declined to hire or make arrangements for another spine surgeon to replace her in the event a full-time spine surgeon is critical to the people of St. Croix or the Territory.

### 5. *Overall Decision to Deny the Preliminary Injunction*

 As we have previously indicated, while the Superior Court's legal conclusions are reviewed *de novo* and its factual findings reviewed for clear error, the ultimate decision to grant or deny an injunction is reviewed solely for abuse of discretion. *Petrus*, 56 V.I. at 554. While the parties have briefed the issue of whether this Court should adopt the sequential or sliding-scale test for preliminary injunctions,[7] we note that in this case all four factors weigh against granting injunctive relief. As

---

[7] As this Court has previously indicated, a split exists between various jurisdictions as to whether a party seeking injunctive relief must "fully satisfy each of the four injunction factors" — known as the sequential test — or whether the moving party may obtain an injunction

such, we can find no reason to disturb the Superior Court's decision to deny Appleyard's motion for a preliminary injunction, whether under the sequential test or the sliding-scale test.

## III. CONCLUSION

Appleyard has failed to meet her burden of establishing a likelihood of success on the merits, irreparable harm to herself, the absence of greater harm to JFL, or that injunctive relief would be in the public interest. Accordingly, we affirm the Superior Court's September 5, 2014 order denying her request for a preliminary injunction.

---

through a weighing of all four factors — known as the sliding-scale test — even if one or more of the factors is not satisfied. *Yusuf*, 59 V.I. at 847 n.3.