# IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. THOMAS & ST. JOHN
**************

JANUSZ PIWOWAR, )
)
)
Plaintiff, ) CASE NO. ST-2020-CV-00337
)
-vs- )
)
)
LAW OFFICES OF KARIN A. BENTZ, P.C., )
)
Defendant[1]. )

Cite as: 2020 VI Super 88U

## CORRECTED MEMORANDUM OPINION[2]

¶1    On September 28, 2020, an evidentiary hearing was held on the preliminary injunctive relief sought by Plaintiff's Emergency Application for Temporary Restraining Order and Preliminary Injunction.[3] For the following reasons, a preliminary injunction will issue.

## I.    FINDINGS OF FACT.

¶2    Having heard the testimony of the parties and reviewed the exhibits and pleadings on file herein, the Court makes the following findings of fact as relevant to deciding the issue presented: whether the Plaintiff, Janusz Piwowar, has demonstrated that he is entitled to the remedy of a preliminary injunction pending a final determination on whether the portion of the August 20, 2013 retainer agreement requiring that any disputes between the Law Offices of Karin A. Bentz, P. C. and her former client, Janusz Piwowar, be submitted to the American Arbitration Association in accordance with their rules for Commercial Disputes is unconscionable and therefore unenforceable.

¶3    The Plaintiff Janusz Piwowar is a resident of Canada.

¶4    Piwowar's first language is Polish. English is his second language. Piwowar can read simple English.

---

[1] By Order of Partial Dismissal entered on October 7, 2020, the American Arbitration Association and Ava Borrasso were dismissed from this action.

[2] The original Memorandum Opinion failed to include the citation required by Supreme Court Rule 106.

[3] Plaintiff was represented by Attorney Jennifer Koockogey (Lee J. Rohn and Associates, LLC); Defendant Law Offices of Karin A. Bentz, P.C. was represented by Attorney Charlotte K. Perrell (Dudley Newman Feuerzeig LLP); and the American Arbitration Association was represented by Attorney Simone R. D. Francis (Ogletree, Deakins, Nash, Smoak & Stewart, LLC).

¶5.     Piwowar describes himself as a handyman involved in construction. He charges $80.00 per hour for his work.

¶6.     In 2010, Piwowar purchased condominium Unit 10 at Shibui Condominiums, St. Thomas, U. S. Virgin Islands. Upon advice of his legal counsel in that real estate transaction, title to the condominium unit was placed in the name of a holding company: Darian Solutions, LLC. Neither Piwowar nor Darian Solutions was engaged in any business activities in the U. S. Virgin Islands.

¶7.     On July 30, 2013, the Board of Directors of Shibui Condominium Association filed a Complaint and an Emergency Motion for a Temporary Restraining Order and a Preliminary Injunction in the Superior Court of the Virgin Islands, Division of St. Thomas and St. John, in a civil action captioned *The Board of Directors of Shibui Condominium Association v. Darian Solutions, LLC; Janusz Piwowar; and Dariusz Chudyk*, and docketed as Case No. ST-13-CV-395.[4]

¶8.     Piwowar has not had any legal training. Prior to the 2013 Shibui lawsuit, he had never had any exposure to the American legal system and he had never been a party in litigation in any capacity.

¶9.     Piwowar had no prior experience hiring lawyers. He had learned of his real estate attorney, who had handled the purchase of the condominium, through his friend Dariusz Andrzejewski. Piwowar did not know anyone on St. Thomas, so he asked his friend Andrzejewski to help him find an attorney to respond to the Shibui lawsuit.

¶10.    Andrzejewski told Piwowar that the real estate lawyer could not help him in the Shibui case.

¶11.    Piwowar made arrangements to travel to St. Thomas and he had a limited amount of time to look for an attorney.

¶12.    Piwowar had an initial meeting with Attorney Karin Bentz ("Bentz") in her office on August 19, 2020.

¶13.    Piwowar was told by Bentz that the matter was time-sensitive because he could be in trouble with the condominium association.

¶14.    Bentz did not read the retainer agreement to Piwowar. Dariusz Andrzejewski, Dariusz Chudyk and Julita de Leon, an attorney in the Bentz Law Firm, were in the room when Piwowar signed the retainer agreement. No one read the retainer agreement to Piwowar.

---

[4] V.I. R. EVID. 201(b); *See also People In Interest of J.J.J.*, 59 V.I. 319, 329 (V.I. 2013) (trial court may take judicial notice of the existence of a document that has been filed with it) and Defendant Bentz' hearing Exhibit 3 admitted into evidence.

¶15. Bentz placed the retainer agreement and a pen in front of Piwowar and showed him where to sign.

¶16. Bentz neither explained her retainer agreement's arbitration clause nor the AAA's Commercial Rules to Piwowar.

¶17. Piwowar did not fully understand the retainer agreement.

¶18. The retainer agreement was drafted by Bentz and it was not subject to negotiation.

¶19. When the retainer agreement was presented to Piwowar to sign he was stressed and under pressure. Shibui's attorney had called Piwowar in Canada. Bentz insinuated that he could be in a lot of trouble with the Shibui lawsuit and told him that the matter was urgent.

¶20. Bentz never told Piwowar that if they had a dispute that they, as client and attorney, would have to present their dispute to the American Arbitration Association using the Commercial Rules.

¶21. Bentz never discussed the difference between arbitration using the AAA's Commercial Rules as opposed to its Consumer Rules.

¶22. Bentz never discussed with Piwowar splitting the costs of a dispute submitted to the AAA pursuant to the Commercial Rules.

¶23. The portions of the retainer agreement requiring arbitration are not differentiated from the rest of the agreement in the way that the sections on accepted credit cards, interest charges or the paragraph that begins with READ BEFORE SIGNING.

¶24. Piwowar signed the retainer agreement on August 20, 2013 on his own behalf.

¶25. On December 30, 2014, the Law Offices of Karin A. Bentz, P.C. filed a Motion to Withdraw from representing all three defendants in Case No. ST-13-CV-395 for failure to pay attorney's fees.[5]

¶26. At some point, Attorney Julita de Leon left the Law Offices of Karin A. Bentz, and started her own law practice. On February 23, 2015, de Leon filed a Notice of Appearance on Behalf of Defendants in Case No. ST-13-CV-395.

¶27. On March 19, 2015, Law Offices of Karin A. Bentz, P.C. filed a Notice of Fee Lien claiming a lien in the amount of $41,774.02 for fees and costs as of March 19, 2015.[6]

---

[5] *Brd. of Dir. of Shibui Cond. Ass'n. v. Darian Solutions, LLC et al., Case No. ST-13-CV-395.*
[6] *Id.*

¶28. By Order entered April 21, 2015, Bentz' Motion to Withdraw as Counsel for the Defendants was granted.[7]

¶29. On September 3, 2015, the parties in Case No. ST-13-CV-395 filed a Joint Motion for Dismissal with Prejudice moving for the dismissal with prejudice of the remaining unresolved counts of the Complaint and Counterclaim with prejudice.[8]

¶30. By Order of Dismissal dated September 4, 2015, and entered on September 8, 2015, the Joint Motion for Dismissal with Prejudice was granted and Case No. ST-13-CV-395 ended.[9]

¶31. Meanwhile, in the matter of *Mohammed A. Suid v. Law Offices of Karin A. Bentz, PC and Karin A. Bentz*, Case No. 01-18-0004-1377, also before the American Arbitration Association and involving the same retainer agreement between Bentz and her former client, the parties were notified by letter dated November 27, 2018, from the AAA that it "has determined that this arbitration arises out of a consumer agreement and, as such, the Consumer Arbitration Rules ("Consumer Rules") apply to this dispute." The November 27, 2018 letter from the AAA goes on to state:

> We note that the arbitration provision has a material or substantial deviation from the Consumer Rules and/or Protocol. Specifically, the provision states:
>
> "The expenses of Mediation and Arbitration will be divided by the Client and the Firm."
>
> The above provision violates Principle 6: Reasonable Cost.[10]

¶32. The Bentz Law Firm's Demand for Arbitration Consumer Arbitration Rules submitted to the AAA is dated March 26, 2020.[11]

¶33. According to the August 25, 2020 Procedural Order No. 1 issued in *Law Offices of Karin A. Bentz, PC v. Darian Solutions; Janusz Piwowar; and Dariusz Chudyk*, ICDR Case No.: 01-20-0003-9977: "On April 6, 2020, the AAA notified the Parties that the Commercial Arbitration Rules would apply to the dispute.[12] "The Parties were further advised that any objection to application of the Rules would need to be served at [the] time their answering statement was provided. Neither party asserted any such objection within the time frame permitted. Accordingly, the Arbitrator finds that objection to application of the AAA Commercial Rules has been waived."[13] The Procedural Order No. 1 goes on to state that: "Notwithstanding said waiver, the Arbitrator further

---

[7] Def. Bentz Ex. 3.

[8] Def. Bentz Ex. 3.

[9] *Id.*

[10] Pl. Ex. 1.

[11] Def. Bentz Ex. 12.

[12] Def. Bentz Ex. 17 and 18.

[13] Def. Bentz Ex. 18.

*Piwowar v. Law Offices of Karin A. Bentz, P.C.*
Case No. ST-2020-CV-00337
**Corrected Memorandum Opinion**
Page 5 of 15

2020 VI Super 88U

finds that the Parties agreed to application of the AAA Commercial Rules to this matter as set forth in the Agreement dated August 20, 2013." Procedural Order No. 1 goes on to determine that the underlying dispute constitutes a commercial dispute, the provision calling for application of the AAA Commercial Rules is not unconscionable in any respect and that the matter shall proceed pursuant to the AAA Commercial Rules.[14]

¶34.    On April 13, 2020, the Bentz Law Firm paid an Initial Administrative Fee to the AAA.[15]

¶35.    The Bentz Law Firm's demand for arbitration seeks damages for legal services rendered in the amount of $75,000.00 plus interest, attorney's fees, costs of the arbitration and punitive/exemplary damages.[16]

¶36.    Following the Bentz Law Firm's Demand for Arbitration Consumer Arbitration Rules, the arbitration proceedings captioned *Law Offices of Karin A. Bentz, PC v. Darian Solutions; Janusz Piwowar; and Dariusz Chudyk*, ICDR Case No. 01-20-0003-9977 before the American Arbitration Association commenced.

¶37.    The Bentz Law Firm's demand for arbitration was made pursuant to the AAA's Consumer Arbitration Rules.[17]

¶38.    When Piwowar received correspondence from the AAA on his doorstep, he did not understand it and hired a law firm in Canada to assist him in finding an American lawyer because he could not travel during the pandemic.

¶39.    Piwowar would have to incur further debt to pay for any costs and fees associated with participating in the AAA proceedings.

¶40.    The expedited proceedings in *Law Offices of Karin A. Bentz, PC v. Darian Solutions; Janusz Piwowar; and Dariusz Chudyk*, ICDR Case No. 01-20-0003-9977 before the American Arbitration Association do not permit the parties to conduct discovery.

¶41.    By letter dated April 30, 2020, Piwowar's Canadian legal counsel wrote to the AAA requesting a 90-day extension to appropriately respond to the arbitration proceedings due to Piwowar's location in Canada and the ongoing COVID-19 pandemic restricting his ability to meet with counsel and travel.[18]

¶42.    Piwowar filed his Answer and Counterclaim on April 30, 2020, denying any amount due and claimed damages in the amount of $40,000.00 by way of refund in fees previously paid to

---

[14] *Id.*

[15] Def. Bentz Ex. 20.

[16] Def. Bentz Ex. 12.

[17] *Id.*

[18] Def. Bentz Ex. 13.

Bentz. Piwowar also seeks interest, attorney's fees, costs of the arbitration and punitive/exemplary damages.[19]

¶43.    By letter dated May 18, 2020, Piwowar's Canadian legal counsel wrote to the AAA asserting, *inter alia*, that Piwowar did not agree to expedited proceedings and requested that the matter be administered under the regular procedures.[20] Arguing that the COVID-19 pandemic constituted exceptional circumstances, Piwowar again requested a 90-day extension of time.

¶44.    By letter dated June 5, 2020, Piwowar's Canadian legal counsel wrote to the AAA requesting that mediation and arbitration proceedings not be scheduled until Piwowar could retain counsel licensed to practice in the United States.[21]

¶45.    By letter dated July 23, 2020, Piwowar's U. S. Virgin Islands counsel notified the AAA that Piwowar objected to proceeding under the AAA's Commercial Rules as opposed to its Consumer Rules.

¶46.    On July 31, 2020, Arbitrator Borrasso[22] issued an Amended Scheduling Order which acknowledged the filing of Piwowar's objection to proceeding under the Commercial Rules. The Amended Scheduling Order directed that the Bentz Law Firm file its response to Piwowar's objection by August 24, 2020. The matter of *Law Offices of Karin A. Bentz, PC v. Darian Solutions; Janusz Piwowar; and Dariusz Chudyk,* ICDR Case No. 01-20-0003-9977, was set for a hearing on September 25, 2020 by videoconference.

¶47.    Bentz paid Piwowar's AAA fee in the amount of $525.00 described as "Opposing Party's Share of the Arbitrator Compensation Deposit" so that the AAA proceedings would advance and not be halted by Piwowar's failure to pay.[23]

¶48.    Bentz provided the following reasons for requiring that disputes with clients be submitted to the AAA in accordance with its Commercial Rules: (1) speed; (2) expedited process without discovery is less expensive; and (3) concern about making fee disputes a matter of public record by filing in the Superior Court of the Virgin Islands.

¶49.    Although the Amended Scheduling Order does not specify that the September 25, 2020 hearing shall be conducted by the Commercial Rules, the setting of a hearing a month later did not provide an opportunity for Piwowar to conduct discovery.

---

[19] Def. Bentz Ex. 14.

[20] Def. Bentz Ex. 15.

[21] Def. Bentz Ex. 16.

[22] Arbitrator Borrasso is mis-identified in the caption as Ava *Borasso.*

[23] Def. Bentz Ex. 20.

## II.     STANDARD FOR THE ISSUANCE OF A PRELIMINARY INJUNCTION.

¶50.    In the instant case, Plaintiff does not dispute or contest that the parties have a valid agreement to arbitrate. The Plaintiff requested a preliminary injunction against the Law Offices of Karin A. Bentz, P.C. to stay the arbitration proceedings in *Law Offices of Karin A. Bentz, PC v. Darian Solutions; Janusz Piwowar; and Dariusz Chudyk*, ICDR Case No. 01-20-0003-9977 before the American Arbitration Association, until a determination is made on the unconscionability and, therefore, the enforceability of the provision of the retainer agreement that requires use of the AAA Commercial Arbitration Rules and Mediation Procedures. Piwowar's challenge is to the arbitration provision that requires application of the Commercial Rules. Piwowar does not challenge the retainer agreement in general. Therefore, Piwowar's challenge may be adjudicated by the Court.[24]

¶51.    When ruling on a motion for a preliminary injunction, the Court must consider four factors: (1) whether the movant has shown a reasonable probability of success on the merits; (2) whether the movant will be irreparably injured by denial of injunctive relief; (3) whether granting preliminary relief will result in even greater harm to the nonmoving party; and (4) whether granting the preliminary relief will be in the public interest.[25] A party seeking a preliminary injunction "has the burden of making some showing on all four injunction factors"[26] that amounts to "a clear showing that [it] is entitled to [injunctive] relief."[27]

¶52.    Because "[i]njunctive relief is an equitable remedy,"[28] and "because '[a] court of equity has traditionally had the power to fashion any remedy deemed necessary and appropriate to do justice in [a] particular case,'"[29] this Court must evaluate the movant's showing on all four factors—considering them together and weighing them against each other—in order to determine whether the movant has discharged its burden.[30] Thus, "the showing on the merits may be as minimal as simply making out a prima facie case if the showing on the moving party's likelihood of irreparable harm is strong enough—and the likelihood that the injunction would cause irreparable harm to the nonmoving party is low enough—to outweigh the weaker showing on the merits."[31] Conversely, a showing of irreparable harm is "less decisive where the likelihood of success on the merits is very strong."[32]

---

[24] *Ostroff v. Alterra Healthcare Corp.*, 433 F. Supp. 2d 538, 541 (E.D. Pa. 2006) citing *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440 (2006) and *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967).

[25] *3RC & Co. v. Boynes Trucking System. Inc.*, 63 V.I. 544, 557 (V.I. 2015) (quoting *Marco St. Croix, Inc. v. V.I. Housing Authority*, 62 V.I. 586, 590 (V.I.2015)); *Tip Top Construction Corp. v. Gov't of Virgin Islands*, 60 V.I. 724, 739 (V.I.2014) (citing *Yusuf v. Hamed*, 59 V.I. 841, 847 (V.I.2013)).

[26] *3RC & Co.*, 63 V.I. at 550.

[27] *Id.* at 557 (quoting *Yusuf*, 59 V.I. at 847) at 847 (internal quotations omitted) (alterations in original).

[28] *Id.* at 553.

[29] *Id.* (quoting *Kalloo v. Estate of Small*, 62 V.I. 571, 584 (V.I. 2015)).

[30] *Id.*

[31] *Id.* at 555 (quoting *Nuuanu Valley Ass'n v. City & Cnty. of Honolulu*, 194 P.3d 531, 547 (Haw.2008)).

[32] *Id.* at 556 (quoting *District of Columbia v. Greene*, 806 A.2d 216, 223 (D.C.2002)).

### A.      Plaintiff has demonstrated a reasonable probability of success on the merits.

¶53.      Piwowar's Complaint seeks: (1) declaratory judgment and injunctive relief with respect to the   unconscionability and unenforceability of Defendant Law Firm's retainer agreement arbitration clause requirement that any arbitration be subject to Defendant AAA Commercial Rules; and (2) an order staying the arbitration proceedings pending a determination by this Court.[33]

¶54.      On September 30, 2020, Piwowar agreed to the dismissal of the American Arbitration Association and Arbitrator Ava Borrasso as Defendants in this matter following the filing of the Motion of the American Arbitration Association and Ava Borrasso to Dismiss Plaintiff's Complaint Based on Arbitral Immunity.[34]

¶55.      Piwowar's Complaint  seeks a declaratory judgment that the requirement that the parties arbitrate under the AAA's Commercial Arbitration Rules and Mediation Procedures is unconscionable and therefore unenforceable. The Virgin Islands Declaratory Judgment Act permits any person whose rights, status or other legal relations are affected by a contract to have determined any question of construction or validity arising under the contract "and obtain a declaration of rights, status or other legal relations thereunder."[35] Declaratory judgment is only permissible where a justiciable controversy exists.[36] The Court finds that the controversy at issue is definite and concrete touching on the legal relations of the parties who have adverse legal interests.[37]

¶56.      "In order to show a reasonable probability of success on the merits, [a party does not] need to show that [it] will actually prevail on the merits at trial, or that [its] success is 'more likely than not,' only that [it] has 'a reasonable chance, or probability, of winning.'"[38] A party "must introduce evidence supporting each element of [its] cause of action."[39] "Where the moving party makes out a very strong showing on the merits—for example a clear and convincing one—injunctive relief may still be appropriate even where the moving party's showing of [irreparable harm] is much weaker, so long as the nonmoving party's likelihood of irreparable harm is similarly very low."[40]

---

[33] Pl. Compl. ¶ 18.

[34] Pl.'s Notice of No Objection to the Motion (Sept. 30, 2020).

[35] V.I. CODE ANN. tit. 5, § 1262.

[36] *Walsh v. Daly*, Case No. ST–01–CV–165, 2014 V.I. LEXIS 36, at *28 (V.I. Super. Ct. June 18, 2014) (citing *Companion Assurance Co. v. Alliance Assurance Co., Ltd.*, 585 F.Supp. 1382, 1384–85 (D.V.I. 1984)). *See also Pate v. Government of the Virgin Islands*, Case No. ST–14–CV–479, 2014 V.I. LEXIS 112, *10–11 (V.I. Super. Ct. Dec. 11, 2014) (observing that, "[a]lthough the decision to entertain a declaratory action is within the discretion of the Court, the matter must involve an actual and justiciable controversy") (internal quotation marks omitted).

[37] *Luis v. Dennis*, 751 F.2d 604, 607 (3d Cir. 1984) (citing *Aetna Life Insurance Co. v. Haworth*, 300 U.W. 227, 240-241 (1937).

[38] *Yusuf*, 59 V.I. 849 (quoting *Singer Mgmt. Consultants, Inc. v. Milgram*, 650 F.3d 223, 229 (3d Cir.2011)).

[39] *SBRMCOA, LLC v. Morehouse Real Estate Investments, LLC*, 62 V.I. 168 (V.I. Super. Ct. March 12, 2015) (citation omitted).

[40] *3RC & Company, Inc. v. Boynes Trucking System, Inc.*, 63 V.I. 544, 556 (V.I. 2015).

¶57.    Piwowar argues that he will be successful on the merits of his claim that the Bentz Law Firm's arbitration clause requiring the use of the AAA's Commercial Rules is unconscionable and therefore unenforceable. The section of the retainer agreement at issue provides:

> Questions or disputes as to the amount of a statement shall be brought to the attention of the Firm within fifteen (15) days of receipt of the bill. The statement will be reviewed and you may be charged for this time unless that statement is in error. If Agreement cannot be reached, the matter shall be submitted to Mediation first and then to the American Arbitration Association in accordance with their rules for Commercial Disputes for a final binding and judicially enforceable arbitration award concerning amounts due. Any other disputes or claims between Client and Firm may be resolved in accordance with the rules of the American Arbitration Association for Commercial Disputes. The expenses of Mediation and Arbitration will be divided by the Client and the Firm.

### (1) Procedural Unconscionability

¶58.    In order to find that a contract provision is unconscionable, both the procedural and substantive elements of unconscionability must be shown.[41] "Generally, a contract or provision thereof is procedurally unconscionable if it constitutes a contract of adhesion."[42] "A contact of adhesion is one prepared by the party with excessive bargaining power and presented to the other party on a take-it-or-leave-it basis."[43] The burden is on Piwowar to prevail on his unconscionability claim:

> Unconscionability encompasses both procedural and substantive unconscionability, and the party seeking to invalidate a contract on this basis bears the burden of showing both. Procedural unconscionability may exist, for example, with a contract of adhesion—where one party has no meaningful choice regarding acceptance—or, where the contract drafter obfuscates terms with convoluted or unclear language.[44]

¶59.    The paragraph containing the arbitration provision in question is located on the third page of a four-page document and is not differentiated or contrasted against the body of the agreement unlike the separate paragraph in all capitals for the section regarding interest charges on unpaid

---

[41] *See Allen v. Hovensa,* 59 V.I. 430, 440 (V.I. 2013) ("…the mere fact that a contract is adhesive does not—without more—render it unconscionable.").

[42] *Moore v. Hovensa, LLC,* 47 V.I. 104, 107 (V.I. Super. June 22, 2005) (internal citations omitted).

[43] *Id.* at 107 (citation omitted); *Williams v. Groundwater & Envtl. Servs. Inc.,* Super. Ct. Civ. No. SX-18-CV-552, 2020 WL 814414, at *3 (V.I. Super. Jan. 8, 2020).

[44] *Valentin v. Grapetree Shores,* Super. Ct. Civ. No. SX-11-CV-305, 2015 WL 13579631 *5 (V.I. Super. Ct. June 30, 2015) quoting *Browne v. Acuren Inspection, Inc.,* 2014 WL 1308838, *2, 2014 U.S. Dist. LEXIS 43965, *4–5 (D.V.I. Mar. 31, 2014).

balances owed to the Bentz Law Firm. In contrast, a dispute resolution clause that was printed in all caps on a receipt that the plaintiff signed when he checked into a resort hotel was not found to be an unfavorable "buried" term.[45]

¶60.    On page 3, two paragraphs below the arbitration provision, the retainer agreement states:

>        **READ BEFORE SIGNING:**    Read this Contract carefully before signing and retain a copy. ASK ANY QUESTIONS BEFORE SIGNING. Your signature acknowledges you understand the Contract and agree to all its terms. Please review the foregoing and, if it meets with your approval, sign a copy of this letter and return it to me by facsimile and the original by mail. If you have any questions, please feel free to call me.

¶61.    In the case at hand, the retainer agreement was presented by Bentz to Piwowar on a take-it-or-leave-it basis.[46] The retainer agreement was not subject to negotiation. Bentz placed the agreement and pen in front of Piwowar and told him where to sign. Piwowar testified that he signed the retainer agreement because he wanted Bentz's help. If he did not sign it, then he would not have legal representation in the *Shibui* lawsuit. Piwowar thought the situation was urgent and this was underscored by the fact that once hired, Bentz's associate attorney Julita de Leon called opposing counsel on the same day the retainer agreement was signed to request an extension of time to file an answer and counterclaim.[47]

¶62.    It is not disputed that: Bentz drafted the retainer agreement containing the arbitration clause. She testified that she adopted the retainer agreement from an ABA Law Practice and Management book since 1996 and that this form was used for all of her hourly cases. Bentz had no independent recollection of reviewing the agreement with Piwowar. Rather, she couched her response with she "would have gone over everything" with Piwowar on the 19th of August and that "I believe we discussed what we normally discussed [with new clients]...".

¶63.    The Court finds that Bentz was the more financially powerful and sophisticated party as compared to Piwowar. Bentz argues that Piwowar has much more business acumen than he will admit to possessing because: he purchased a condominium in the name of a limited liability company (on the advice of his real estate counsel Attorney David Bornn); that he lent money to his erstwhile partner Darius Chudyk and to Bentz's former associate, Attorney Julita de Leon and that these transactions were documented by promissory notes and mortgages. However, Piwowar did not prepare the promissory notes and mortgage documents for these transactions focused on by Bentz as supposed proof of Piwowar's sophistication.

---

[45] *Id.* at *5.

[46] *Berrios v. Hovic*, No. CIV. 05-CV-192, 2010 WL 2384589, at *5 (D.V.I. June 9, 2010)
(A contract that is prepared by the party with greater bargaining power and presented to the other party on a take-it-or-leave-it basis is known as a contract of adhesion and is generally found to be procedurally unconscionable (citations omitted)); *Moore v. Hovensa*, LLC, 47 V.I. 104 (V.I. Super. June 22, 2005) ("A contract of adhesion is one prepared by the party with excessive bargaining power and presented to the other party on a take-it-or-leave-it basis. *See Trailer Marine Transp. Corp. v. Charley's Trucking, Inc.*, 20 V.I. 28 (V.I. Super. Ct. 1984).

[47] Pl.'s Ex. 2.

¶64.     Piwowar testified with an obvious accent and with the syntax of a non-native English-speaker. He testified that he could read simple English. While Bentz did not cause Piwowar's predicament of having to retain legal counsel in order to respond to the lawsuit in 2013, she did emphasize the urgent and serious nature of the litigation indicating that a lien could be placed against his condominium unit and insinuating that he could lose the unit. There is no evidence that Bentz explained her retainer agreement to Piwowar or that she offered to. Piwowar and Bentz never discussed the arbitration clause or the use of the AAA's Commercial Rules. She did not read it to Piwowar, and he testified that while he read the retainer agreement as best as he could under the circumstances, he did not understand it. Nor did Bentz ever explain to Piwowar the difference between proceeding under the AAA's Commercial Rules as opposed to the Consumer Rules.

### (2) Substantive Unconscionability.

¶65.     "[S]ubstantive unconscionability refers to terms that unreasonably favor one party to which the disfavored party does not truly assent."[48] When Piwowar signed the retainer agreement, he was not aware that the AAA's Commercial Arbitration Rules require that all expenses of the arbitration including the administrative fees and the arbitrator's fees, with the exception of the filing fee, be shared equally between the parties.[49] In this case, the arbitrator's hourly rate is $595 for study time and $4,165.00 for each additional hearing day. Piwowar testified that he charges $80.00 for his work.

¶66.     Commercial Rule 54 regarding expenses provides "[t]he AAA may, in the event of extreme hardship on the part of any party, defer or reduce the administrative fees." R-54 does not address reduction of the arbitrator's hourly rate or fee.

¶67.     Piwowar argues that by requiring the use of the Commercial Rules, the Bentz Law Firm's retainer agreement has made the arbitral forum prohibitively expensive. Under the Commercial Rules, Piwowar would have to pay, in addition to his attorney's fees, one-half of the following: AAA's administrative fees and the arbitrator's compensation. While Bentz has paid Piwowar's share of the arbitrator's compensation deposit, this payment does not include additional AAA administrative fees and future charges for the arbitrator's time, in the very likely event that the hearing exceeds one day, and time spent by the arbitrator considering the evidence and preparing the arbitration award. By requiring Piwowar to arbitrate under the Commercial Rules, Bentz effectively placed one-half of the cost of arbitration on Piwowar. If the retainer agreement required that the parties arbitrate under the Consumer Rules, then the Bentz Law Firm would be required to pay the following[50]:

---

[48] *Uyen Le v. Treasure Bay VI Corp.*, No. SX-16-CV-316, 2017 WL 785873, at *4 (V.I. Super. Feb. 27, 2017) (quoting *Canton v. Toyota Motor Corp.*, Super. Ct. Civ. No. SX-10-CV-227, 2011 WL 3856155 (V.I. Super. Ct. April 20, 2011).

[49] R-54 (Def. Bentz Ex. 19-A)

[50] Def. Bentz. Ex. 19 at page 33.

| | |
|---|---|
| Filing fee: | $1,700.00 |
| Hearing fee: | $ 500.00 |
| Arbitrator Compensation: | $1,500.00 per hearing per day |

¶68. Under the Consumer Rules, Piwowar would not have to pay any fees unless he filed a demand for arbitration in which case the filing fee is $200.00.[51] Based upon the foregoing, the Court finds the requirement to proceed under the Commercial Rules unreasonably favored the Bentz Law Firm, which was the party with the greater bargaining power.

¶69. The Court acknowledges that in light of the Covid-19 pandemic, the arbitration hearing will be conducted remotely by video conferencing thereby eliminating the costs that would have been incurred if the arbitrator, parties, and witnesses had to travel to a designed location for the hearing.

¶70. Piwowar also argues that the expedited proceeding directed by Arbitrator Borrasso, which does not allow discovery, makes the arbitration clause in the retainer agreement substantively unconscionable. The Court notes that Consumer Rule 22 provides for the exchange of information such as documents, specific information, and witnesses between the parties before the hearing, but there are no specific provisions regarding discovery as opposed to Commercial Rule 11. Interestingly enough, Rules 22 and 23 acknowledge that "to otherwise achieve a fair, efficient and economical resolution of the case..." the arbitrator has the authority to issue any orders regarding the conduct of document requests.[52]

¶71. Bentz never explained to Piwowar the difference between proceeding under the AAA's Commercial Rules as opposed to the Consumer Rules. Given Piwowar's ability to read only simple English and that he did not fully understand what he was reading, the Court finds that Piwowar did not truly assent to using the Commercial Rules.

¶72. The Bentz Law Firm relies heavily upon *Farrell v. Grapetree* claiming that "this Court rejected the argument that an arbitration agreement is unconscionable as a result of the application of Commercial Rules"[53] However, *Farrell v. Grapetree* is distinguishable from the case at hand in at least two aspects. First, in *Farrell v. Grapetree*, the underlying Membership Agreement stated that the arbitrator will decide which rules apply. Second, the Court in *Farrell* determined that the underlying Membership Agreement

> attempts to prevent potential unconscionability from being imposed on the Plaintiff by including a provision, which states that "[i]f you cannot afford the Administrator's [AAA] fees or you believe they are too high, we will consider in good faith any reasonable written request for us to bear the cost." We will not

---

[51] *Id.*

[52] Def. Bentz Ex. 19-A.

[53] Defendant Bentz's Closing Brief and Opposition to Plaintiff's Motion for Entry of a Preliminary Injunction at page 10 (October 2, 2020).

ask you to pay or reimburse us for any fees ...." Given this provision the Court finds that the arbitration agreement is not unconscionable and therefore enforceable.[54]

Such a provision (addressing the inability of a party to pay) was not included in the retainer agreement requiring the parties to arbitrate their dispute using the AAA's Commercial Rules.

¶73. Finally, while *Farrell v. Grapetree* is instructive with respect to the elements of unconscionability, the decision of a single Superior Court judge is not binding precedent on other Superior Court judges.[55]

¶74. Based upon the foregoing, the Court finds Piwowar has shown that he has reasonable probability of success on the merits of his action for declaratory relief seeking a declaration that the retainer agreement arbitration clause requiring that any arbitration be subject to the AAA's Commercial Rules is unconscionable and unenforceable. Therefore, this showing by Piwowar weighs in favor of granting the requested preliminary injunction.

### B. Plaintiff has demonstrated that he will suffer an irreparable injury if an injunction does not issue.

¶75. "[A] party moving for a preliminary injunction must demonstrate primarily that irreparable harm is likely without the injunction."[56] Irreparable harm is "harm for which a monetary award does not adequately compensate...."[57] "When the moving party's loss is a matter of simple mathematic calculation, [the movant] fails to establish irreparable injury for preliminary injunction purposes."[58] Irreparable injury is suffered where monetary damages are difficult to ascertain or are inadequate.[59] Because "the basic purpose of a preliminary injunction is to protect the movant from irreparable injury that would occur before a full trial took place,"[60] the Court is only concerned with whether the injuries that Plaintiffs suffer—if any—between now and the trial of this matter are irreparable in nature.

¶76. Proceeding under the AAA's Commercial Rules will be prohibitively expensive for Piwowar. He has testified as to his personal financial problems caused by the Covid-19 pandemic. If forced to proceeding under the Commercial Rules, his only options are to add to his current debt

---

[54] *Farrell v. Grapetree Shores, Inc.*, No. SX-12-CV-358, 2019 WL 7985360, at *3 (V.I. Super. Oct. 25, 2019).

[55] *In the Matter of Q. G.*, 60 V.I. 654, 661 n.8 (V.I. 2014) citing *Threadgill v. Armstrong World Indus.*, 928 F.2d 1366, 1371 & n.7 (3d Cir.1991) ("The doctrine of *stare decisis* does not compel one [trial] court judge to follow the decision of another.") (collecting cases); *Edney v. Edney*, 64 V.I. 661, 665 n.2 (V.I. 2016).

[56] *Id. at 554.*

[57] *Id.* at 554 (quoting *Yusuf v. Hamed*, 59 V.I. 841, 854 (V.I.2013)).

[58] *Yusuf v. Hamed*, 59 V.I. 841, 854 (V.I. 2013).

[59] *Gourmet Gallery Crown Bay, Inc. v. Crown Bay Marina, L.P.*, 68 V.I. 584, 597 (V.I. 2018).

[60] *3RC & Co., Inc. v. Boynes Trucking Sys., Inc.*, 63 V.I. 544, 559 (V.I. 2015) (citations omitted).

by borrowing more money, or to simply fail to pay the expenses of arbitration and any arbitrator's fees. If he proceeds under the expedited schedule implemented by the Arbitrator pursuant to the Commercial Rules, then he will not have the benefit of discovery to help defend against a $75,000.00 claim.

¶77.   On March 19, 2015, the Bentz Law Firm filed a Notice of Fee Lien  in the amount of $41,774.02 for fees and costs as of March 19, 2015. The Bentz Law Firm's demand for arbitration now seeks the sum of $75,000.00 plus interest, attorney's fees, costs of the arbitration and punitive/exemplary damages. The amount claimed by the Bentz Law Firm has almost doubled. In light of the financial hardship and the expedited proceedings which do not allow for any discovery, the Court finds that Piwowar will suffer irreparable injury if an injunction does not issue restraining the Bentz Law Firm from forcing him to arbitrate under the AAA's Commercial Rules.

¶78.   Piwowar has demonstrated he will suffer irreparable injury if an injunction preventing the parties from arbitrating under the AAA's Commercial Rules if the status quo is not preserved and an injunction does not issue. This factor weighs in favor of granting the preliminary injunction.

### C.   Plaintiff has demonstrated that the balance of hardships favors the issuance of an injunction.

¶79   Bentz testified that she has been harmed because she has had to notify her carrier, that she has not been paid the attorney's fees and costs she claims are owed, and she has lost a day of billable hours by having to testify at the hearing on the Motion for Preliminary Injunction. However, Bentz did not address the issue of whether she would have had to notify her insurance carrier anyway with respect to Piwowar's counterclaim filed in the arbitration proceedings initiated by her law firm. As for losing billable hours, this will also occur when testifying in the arbitration proceedings. Piwowar has also argued that the Bentz Law Firm still has the option of filing an action in the Superior Court against him. However, Bentz argues that this latter option does not have the confidentiality attendant to arbitration, and there is the delay caused by judges' recusals. The Court finds that the harm to Piwowar by being forced to arbitrate under the more expensive Commercial Rules on an expedited basis outweighs any hardships to the Bentz Law Firm and, therefore, favors the issuance of the injunctive relief sought by Piwowar. This factor weighs in favor of granting the preliminary injunction.

### D.   The issuance of a preliminary injunction in this matter will serve the public interest.

¶80.   The public interest will be served by the issuance of a preliminary injunction because persons who hire attorneys, oftentimes when a matter is time-sensitive should not unwittingly enter into  arbitration clauses that cause them to pay for a dispute resolution procedure selected by the

*Piwowar v. Law Offices of Karin A. Bentz, P.C.*
Case No. ST-2020-CV-00337
**Corrected Memorandum Opinion**
**Page 15 of 15**

2020 VI Super 88U

party in the superior bargaining position. "Further, 'the public interest ... factor will typically favor the moving party 'if [it] demonstrates both a likelihood of success on the merits and irreparable injury.'"[61]

### III.     CONCLUSION

¶81.     Having evaluated Piwowar's proofs of the four preliminary injunction factors on a sliding scale analysis, the Court finds that the factors weigh in favor of granting Piwowar's Motion for Preliminary Injunction until a trial on the merits. An Order consistent with this Memorandum Opinion shall follow.

Dated: 10|30|2020

**DENISE M. FRANCOIS**
Judge of the Superior Court of the Virgin Islands

**ATTEST:**

**TAMARA CHARLES**
Clerk of the Court

BY:

**LORI BOYNES**
Chief Deputy Clerk   11 / 2 / 2020

---

[61] *Fenster v. Dechabert*, Super. Ct. Civ. No. SX-16-CV-343, 2016 WL 3913574, at *9 (V.I. Super. July 13, 2016) citing *3RC & Co. v. Boynes Trucking Sys.*, 63 V.I. 554, 557 (V.I. 2015).